UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNVERFERTH MFG CO INC,<br><br>　Plaintiff,<br><br>　v.<br><br>PAR-KAN CO., LLC,<br><br>　Defendant. | Case No. 3:23-CV-00653-GSL-SJF |

### OPINION AND ORDER

This matter is before the Court on cross-motions for judgment on the pleadings by Plaintiff Unverferth Manufacturing Company, Inc. [DE 35] and Defendant Par-Kan Co., LLC [DE 38]. For the following reasons, the Court DENIES Defendant's motion, and GRANTS-IN-PART and DENIES-IN-PART Plaintiff's motion.

**A. Factual History**

In 2013, Plaintiff filed suit in this district against Defendant for patent infringement. [DE 36, page 1]. *Unverferth Mfg. Co., Inc. v. Par-Kan Co.*, No. 13-cv-097 (N.D. Ind. Feb. 12, 2013). In that action, Plaintiff asserted U.S. Patent No. 8,221,047 ("the '047 patent") against some of Defendant's seed tender products. [*Id.*]. In 2014, the parties resolved the litigation by entering into a settlement agreement. [*Id.*]; *see* [DE 42-2]. That settlement agreement included in relevant part:

> Unverferth covenants not to sue or otherwise seek to hold Par-Kan liable for infringement of the Unverferth Patents for the manufacture, use, sale, and/or offer for sale of the Currently Manufactured Combination Loading and Unloading Seed Tender . . . . The Covenant Not to Sue is limited to Par-Kan's Currently Manufactured Combination Loading Seed Tender . . . . The Covenant Not to Sue does not apply to Previously Manufactured Combination Loading and Loading Seed Tender, or any potential future design . . . or to any patents other than the Unverferth Patents.

[*Id.* at page 5, § 5] ("Covenant Not to Sue"). The settlement agreement further defines the "Unverferth Patents" that are within the scope of the Covenant Not to Sue as:

> [A]ny U.S. or foreign patents issued on or before the Effective Date of this Agreement . . . that are owned by or licensed to Unverferth. Unverferth Patents excludes any U.S. and foreign patents, continuations, continuations-in-parts, divisional, re-issues, reexaminations, renewals, and extensions that may be issued after the Effective Date of this Agreement.

[*Id.* at page 3, § 1.9]. The Covenant Not to Sue purportedly applies only to a certain "product that was manufactured beginning in 2014 by [Defendant], and which was publicly displayed at the Commodity Classic Show in San Antonio, Texas in February 2014 . . . ." [*Id.* at page 2, § 1.4]; [DE 36, page 5 n.4].

Plaintiff filed the instant action on July 11, 2023, again for patent infringement. [DE 2]. Plaintiff now asserts U.S. Patent No. 8,967,940 ("the '940 patent") and 9,745,123 ("the '123 patent"), which the parties agree are continuations of the previously asserted '047 patent and were both issued after the effective date of the 2014 settlement agreement. [DE 36, page 2]; [DE 39, page 2]. The accused products in the instant action are various Seed Runner products manufactured by Defendant. [DE 2]. With its Answer and Amended Counterclaims, Defendant brings two counterclaims against Plaintiff: 1) breach of contract and 2) bad-faith patent assertion under Indiana Code § 24-11. [DE 42-1]. Under its first counterclaim, Defendant claims that it has an implied license to the '940 and '123 patents under the 2014 settlement agreement because they are both continuations of the '047 patent. [*Id.* at page 16]. Under its second counterclaim, Defendant argues that the instant action is meritless and is brought in bad faith, in part, because Plaintiff allegedly failed to disclose certain continuation patent applications during the 2014 settlement negotiations. [*Id.* at pages 17–18].

2

On December 11, 2023, Plaintiff moved for judgment on the pleadings with respect to both counterclaims asserted by Defendant. [DE 35]. Two days later, Defendant filed a cross-motion for judgment on the pleadings against Plaintiff's claims for patent infringement. [DE 38].

### B. Legal Standard

Under Rule 12(c), a party may move for judgment on the pleadings after the complaint and answer have been filed. Fed. R. Civ. P. 12(c); *see Supreme Laundry Serv., LLC v. Hartford Cas. Ins. Co.*, 521 F.3d 743, 746 (7th Cir. 2008). Rule 12(c) motions are evaluated under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which tests the sufficiency of the complaint and not the merits of the suit. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). As with Rule 12(b)(6) motions, the Court must view the facts alleged in the light most favorable to the non-moving party. *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). "Only when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved will a court grant a Rule 12(c) motion. *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007) (citing *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 718 (7th Cir.2002)). A challenged counterclaim will survive a motion for judgment on the pleadings only when the counterclaim "pleads factual content that allows the court to draw the reasonable inference that the [counterclaim-defendant] is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

C. Discussion

### i. *Implied License*

To resolve both parties' motions for judgment on the pleadings, the Court must answer the same question: whether Plaintiff is legally estopped from asserting the '940 and the '123 patents because of the 2014 settlement agreement. In that agreement, Plaintiff granted Defendant an express license to the '047 patent with regard to certain seed tender products. The parties disagree as to whether that agreement also created an implied license for both the '940 and the '123 patents against the accused products in the instant case.[1]

"[L]egal estoppel refers to a narrow category of conduct encompassing scenarios where a patentee has licensed or assigned a right, received consideration, and then sought to derogate from the right granted." *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1279 (Fed. Cir. 2009) (cleaned up). The issue of legal estoppel arises when newly asserted patents are continuations of previously licensed patents. *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1361 (Fed. Cir. 2011). Continuations, by definition, are based on the same disclosure as their parent patents and can claim no new or distinct invention. *Id.* When newly asserted patents have the same inventive subject matter as that disclosed in licensed patents and the same products are accused, there is a clear derogation of a licensed patent rights. *See id.* As such, the Federal Circuit has held that where "continuations issue from parent patents that

---

[1] Defendant also raises an argument that any finding of infringement by the accused products is precluded under the express license of the '047 patent. [DE 42-1, ¶¶ 21–22]. Defendant argues that because of a substantial overlap in claim scope between the '047 patent claims and the asserted claims, the instant lawsuit interferes with its contractually granted rights under the '047 patent. [DE 47, pages 9–10]. Plaintiff does not address this specific issue of overlapping claim scope in its Reply. [DE 54, pages 7–8]. While Plaintiff "admits that to practice claim 1 of the '047 patent, a product must also practice at least one claim of the '940 patent," it does not concede the overlapping claim of the '940 patent is the one being asserted, nor does it make any concession with regard to the '123 patent. An analysis of overlapping claim scope requires substantial factual inquiries, and a determinative ruling is inappropriate at this stage of the litigation. *See Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, 689 F.3d 1368, 1376 (Fed. Cir. 2012).

previously have been licensed to certain products, *it may be presumed* . . . those products are impliedly licensed under the continuations as well." *Id.* (emphasis added). This presumption is rebuttable by a "clear indication of mutual intent to the contrary," with the burden of establishing this mutual intent on the licensor or patent owner. *Id.*; *see Endo Pharms. Inc. v. Actavis, Inc.*, 746 F.3d 1371, 1378 (Fed. Cir. 2014) ("Taken together, [*TransCore* and *General Protecht*] stand for the rule that a license or a covenant not to sue enumerating specific patents may legally estop the patentee from asserting *continuations* of the licensed patents in the absence of mutual intent to the contrary.").

In *Cheetah*, the Federal Circuit discussed the burden on the patent owner to sufficiently "carve out continuation patents" from a licensing agreement. *Cheetah Omni LLC v. AT&T Servs., Inc.*, 949 F.3d 691, 696 (Fed. Cir. 2020). In that case, the patent owner argued that because the licensee knew about the later asserted continuation patents, not specifically naming those patents in the licensing agreement showed a mutual intent by both parties to exclude them from the license. *Id.* The Federal Circuit disagreed, holding that such evidence was not enough to overcome the presumption of an implied license for the continuation patents. *Id.* ("The naming of certain patents expressly, however, does not evince a clear mutual intent to exclude other patents falling within the general definitions in an agreement."); *see TransCore*, 563 F.3d at 1279.

In the instant case, it is undisputed that the newly asserted patents are continuations of the previously licensed patent. [DE 36, page 2]; [DE 39, page 2]. Therefore, the *TransCore* presumption suggests that Defendant was granted an implied licensed for the newly asserted patents, unless Plaintiff can satisfy its burden to show a "clear indication of mutual intent" that future continuation patents were carved out of the 2014 settlement agreement. *Id.* The parties both assert that the terms of the 2014 settlement agreement are unambiguous and that the Court

5

need not evaluate extrinsic evidence but rather interpret the terms as a matter of law. [DE 36, page 17]; [DE 39, page 8]. Yet, the parties paradoxically reach different conclusions regarding the mutual intent to create a carveout, and Plaintiff provides extrinsic evidence for the Court to consider in case it finds that the settlement agreement is not unambiguous. As such, this Court must determine whether ambiguity exists in the material provisions of the 2014 settlement agreement, whether those provisions affect the rebuttable presumption of the existence of an implied license, and, significant in a 12(c) motion, whether there still exists an issue of material fact as to the mutual intent of the parties at the time the 2014 settlement agreement was executed.

Determining whether the provisions of the 2014 settlement agreement are ambiguous is a matter of contract interpretation, and, here, Ohio law applies because of the settlement agreement's choice-of-law provision. [DE 42-2, §13]. The terms of a contract are ambiguous "when they are susceptible to more than one reasonable interpretation." *Tera, L.L.C. v. Rice Drilling D, L.L.C.*, No. 2023-0411, 2024 WL 2333654, at *3 (Ohio 2024). "[W]hether a contract is ambiguous is question of law, but the resolution of an ambiguous term in a contract is a question of fact." *Id.* In other words, this Court must determine whether the 2014 settlement agreement is ambiguous regarding the mutual intent of the parties, and, if so, then it will be for a jury to determine whether the parties intended to contract for a carve-out of the continuation patents in the settlement agreement. *See Theta IP, LLC. v. Samsung Elecs. Co.*, No. 20-CV-00160, 2021 WL 5229382, at *3 (W.D. Tex. June 11, 2021) (denying accused infringer's motion for summary judgment because "evidence in the record demonstrates an issue of material fact with respect to the mutual intent of the parties").

Section 1.9 of the 2014 settlement agreement is the central provision to the contested issue of the parties' mutual intent to carve-out or exclude continuation patents. In relevant part,

6

the provision states that "Unverferth Patents excludes any U.S. and foreign patents, continuations . . . that may be issued after the Effective Date of this Agreement." [DE 42-2, § 1.9]. On its face, this provision does not appear to unambiguously carve-out continuations of the '047 patent. *See Gen. Protecht*, 651 F.3d at 1362 (finding that similar language in the *TransCore*, 563 F.3d at 1273, settlement agreement did not overcome the presumption of an implied license for a continuation patent). However, Federal Circuit case law suggests that this type of wording in a settlement agreement *is* unambiguous. *See TransCore*, 563 F.3d at 1273, 1276, 1277 (holding that similar language in a settlement agreement to be unambiguous. The language reads as: "This Covenant Not to Sue shall not apply to any other patents issued as of the effective date of this Agreement or to be issued in the future."). While this is persuasive, this Court is bound by Ohio case law for purposes of interpreting the 2014 settlement agreement, determining ambiguity, and evaluating extrinsic evidence. *See id.* at 1277 (holding that California law governed its interpretation of the parties' settlement agreement). Under Ohio case law, courts may evaluate extrinsic evidence to give effect to the parties' intention when "the contract is unclear or ambiguous, or when circumstances surrounding the agreement give the plain language special meaning." *Lutz v. Chesapeake Appalachia, L.L.C.*, 71 N.E.3d 1010, 1013 (Ohio 2016). Relevant here, extrinsic evidence may include "the objectives the parties intended to accomplish by entering into the contract." *Id.*

In the instant case, Plaintiff offers extrinsic evidence in the form of communications between the parties relating to the negotiation history for the 2014 settlement agreement. This includes emails between the parties and draft agreements. Reviewing this extrinsic evidence, the Court finds that an issue of material fact exists as to the mutual intent of the parties when entering into the agreement. Specifically, the negotiation history includes several incidences

7

when Defendant proposed more particular language in the covenant not to sue, but Plaintiff refused. For example, in one instance, Defendant asked that the parties "stipulate the [Defendant's] current seed tender design . . . does not infringe any current patents, *nor any Unverferth patent to issue in the future from any currently pending application*." [DE 49-3, page 14]. But Plaintiff refused to such a stipulation. [*Id.* at pages 9–10]. In response to Plaintiff's refusal, Defendant concedes to a stipulation that its "current seed tender design . . . does not infringe *any current patents*," acknowledging that this is "a middle ground" and appears to "leave the door open for future infringement claims." [*Id.* at pages 7–8]. The extrinsic evidence presented suggests that at some point in the negotiations, Plaintiff attempted to reserve the right to sue for infringement on continuations of the licensed patents and Defendant conceded to such. At a minimum, Plaintiff's rejection of Defendant's proposal, which would have covered the asserted patents in the instant case, is strong enough evidence to create a material issue of fact. *See Theta IP,* 2021 WL 5229382, at *4–5. In light of this extrinsic evidence, the 2014 settlement agreement could be reasonably interpreted to include or exclude the continuations of the '047 patent, thereby creating a factual issue as to the parties' mutual intent for a carveout of the patents at issue and precluding judgment as a matter of law.

   Even if the Court found that the 2014 settlement agreement created an implied license for the asserted patents, Defendant would not be entitled to judgment as a matter of law. There still exists a question of fact as to whether the accused products in the instant case fall within the scope of the products subject to the covenant not to sue in the 2014 settlement agreement. *Cascades AV LLC v. Evertz Microsystems Ltd.,* 335 F. Supp. 3d 1088, 1097 (N.D. Ill. 2018) (distinguishing itself from *General Protecht* because the plaintiff in *General Protecht* asserted a continuation patent covering the "same products," whereas the plaintiff in its case asserted a

8

child patent covering *newly developed products*); *see General Protecht*, 651 F.3d at 1361. Defendant alleges that the accused products are covered by the Covenant Not to Sue in the 2014 Settlement Agreement. [DE 47, page 3]; *see* [DE 2, ¶ 15], [DE 42, §§1.4, 5]. But Plaintiff alleges that the Covenant Not to Sue only covered Defendant's "then existing EF375 product," while its Complaint lists several additional products as well. [DE 51, pages 18–19]. Based off the pleadings alone, the Court is unable to determine if products covered by the Covenant Not to Sue are the same as the products being accused in the instant case. Such a determination can be appropriately made after discovery.

### ii. *Bad-Faith Patent Assertion*

Plaintiff's motion also seeks a judgment as a matter of law against Defendant's counterclaim for bad-faith patent assertion. [DE 35]. Plaintiff argues that Defendant failed to factually plead bad faith, and, therefore, the Court should find that Defendant failed to state a claim for which relief can be granted. [DE 36, page 21]. For the following reasons, the Court agrees with Plaintiff and denies this counterclaim as a matter of law.

Under Indiana Law, "[a] person may not assert a claim of patent infringement *in bad faith*." Ind. Code Ann. § 24-11-3-1 (West) (emphasis added). The statute lists several factors that support a finding of bad faith, § 24-11-3-2, and that support a finding of no bad faith, § 24-11-3-3. At a high level, factors indicating no bad faith include a certain level of detail in a demand level (e.g., asserted patents and claims, patent owner information, allegations of infringement that identify specific areas in the accused products that are covered by the asserted claims), substantial investment and use of the patent for production or sale by the patentee, and successful enforcement of the patent in prior litigation. *Id.*

Here, Plaintiff's demand letter to Defendant is very detailed and supports a finding of no bad faith patent assertion. [DE 30-8]. The letter identifies both the '940 and '123 patents as being the ones asserted. It identifies Plaintiff as the owner and describes Plaintiff as a manufacturer of seed tender products. Significantly, the demand letter identifies the claims to be asserted (claims 16 of the '940 patent and 10 of the '123 patent) and maps specific claim elements to various components of Defendant's accused product, in an effort to demonstrate that the accused product is encompassed by each element of the asserted claims. In addition, the demand letter does not make any unreasonable asks: for example, demanding an excessive licensee fee within an unreasonably short period of time. Moreover, Plaintiff appears to have asserted the same continuations patents against other parties, and it has alleged that all those cases have been litigated on their merits. [DE 36, page 23]. In support of its counterclaim, Defendant asserts that Plaintiff's claims are meritless and based on deceptive conduct, but it relies only on conclusory statements. [DE 47, pages 14–18]. Defendant's arguments don't have a clear nexus to bad-faith assertion of the patents, but instead largely attack the Plaintiff's claims on their merits. Defendant does not address the statutory factors that would support a finding of bad faith assertion nor does it counter Plaintiff's arguments against a finding of such.

The Court finds that Defendant fails to allege sufficient facts to support a counterclaim of bad-faith patent assertion, and Plaintiff is entitled to a judgment as a matter of law.

## CONCLUSION

The Court hereby DENIES Defendant's Motion for Judgment on the Pleading [DE 38]. The Court GRANTS-IN-PART, with regard to Counterclaim 2, and DENIES-IN-PART, with regard to Counterclaim 1, Plaintiff's Motion for Judgment on the Pleadings [DE 35]. Further, the Court MOOTS Plaintiff's Motion to Dismiss [DE 32] because Defendant filed Amended

Counterclaims [DE 42-1]. Finally, the Court MOOTS Plaintiff's Second Motion for Hearing [DE 71] because of the instant order.

SO ORDERED.

ENTERED: September 26, 2024

/s/ GRETCHEN S. LUND
Judge
United States District Court