UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNVERFERTH MFG CO INC, | |
| Plaintiff, | |
| v. | Case No. 3:23-CV-00653-GSL-JEM |
| PAR-KAN CO., LLC, | |
| Defendant. | |

## OPINION AND ORDER

On July 11, 2023, Plaintiff Unverferth Manufacturing Company, Inc. filed this action against Defendant Par-Kan Company, LLC, alleging infringement of United States Patent Nos. 8,967,940 (the "'940 patent") and 9,745,123 (the "'123 patent") (collectively "the asserted patents"). [DE 2]. The asserted patents relate to seed or grain tender (a type of farm equipment).

Before the Court is the issue of claim construction. [DE 101]; *see* N.D. Ind. L.P.R. 4-1. The parties have completed briefing, and their submissions included an expert declaration and deposition testimony. [DE 95]; [DE 96]; [DE 99]; [DE 100]. The Court held a claim construction hearing on May 21, 2025. [DE 114]. Having considered the arguments and evidence presented by the parties in their written submissions and at the May 21, 2025, *Markman* hearing, the Court issues this Order.

### I. BACKGROUND OF PATENTS

The asserted patents are directed to seed or grain tenders. [DE 86-2, page 12–20]. The patented technology is used to transfer seed or grain from bulk storage to a planter. Prior to the advent of this technology, farmers performed this transfer manually. Now, seed or grain tenders may be used for more efficient and safer operations. The inventions described in the '940 and the

'123 patent have a support arm and conveyor that may be moved side-to-side and up-and-down. [*Id.* ¶¶ 48, 51]. This enables the invention to move into "loading" and "unloading" positions, allowing farmers to easily operate the machines for receiving seed from a bulk source and discharging the seed into a desired planting equipment. [*Id.*].

## II. LEGAL PRINCIPLES

### 1. Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed Cir. 2004). Courts are responsible for the construction of claims, and terms of art within the claim, because the ultimate question of the proper construction of a patent is a question of law. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 321 (2015) (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996)). Even when evidentiary findings are involved or required, the construction of a claim term remains exclusively for the courts to determine. *Id.*

Generally, courts should give claim terms their ordinary and customary meaning. *Phillips*, 415 F.3d at 1312 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). The ordinary and customary meaning of a claim term is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention . . . ." *Id.*; *see Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998) ("It is the person of ordinary skill in the field of the invention through whose eyes the claims are construed. Such person is deemed to read the words used in the patent documents with an understanding of their meaning in the field, and to have knowledge of any special meaning

and usage in the field."); *see also Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term . . . in a vacuum." (quoting *DeMarini Sports, Inc. v. Worth*, 239 F.3d 1314, 1324 (Fed. Cir. 2001))).

To determine the ordinary and customary meaning of a claim term, as understood by a person of skill in the art, a court must look at intrinsic sources, such as "the words of the claims themselves, the remainder of the specification, [and] the prosecution history . . . ." *Phillips*, 415 F.3d at 1314 (quoting *Innova*, 381 F.3d at 1116). In addition, a court may evaluate "extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.*

First, a court should evaluate a claim term in the context of the claims themselves. *See id.* ("[T]he context in which a term is used in the asserted claim can be highly instructive."). In several cases, the Federal Circuit has found that "the use of a term within the claim provide[d] a firm basis for construing the term." *Id; see, e.g.*, *Mars, Inc. v. H.J. Heinz Co.*, 377 F.3d 1369, 1374 (Fed. Cir. 2004); *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1356 (Fed. Cir. 1999). A court should not restrict its evaluation to just the context of the asserted claim, but it should consider the term's usage in other claims in the patent too. *Id.* ("Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of the claim term."). Because terms are generally used consistently throughout the patent, special usages of a term or differences between claims can also be "a useful guide in understanding the meaning of particular claim terms." *Id.*

Second, a court should read a claim term "in view of the specification, of which they are part." *Id.* at 1215 (quoting *Markman*, 52 F.3d at 978); *see id.* at 1313 ("[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in

3

which the disputed term appears, but in the context of the entire patent, including the specification."). The Federal Circuit has held that the specification is always relevant to claim construction, is usually dispositive, and is the single best guide to the meaning of a disputed term. *Vitronics*, 90 F.3d at 1582. Further, the Federal Circuit has noted that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess." *Phillips*, 415 F.3d at 1316. In other words, the specification may demonstrate that the inventor intended a definition other than the ordinary and customary definition, or the inventor intended to limit the claim scope by intentional disclaimer or disavowal. *Id.*

Third, a court may look at intrinsic evidence beyond the patent itself—namely, the patent's prosecution history. *Id.* at 1317. The prosecution history, in part, represents a negotiation between the Patent Office and the applicant, and it provides evidence of how the Patent Office and the inventor understood the patent, claims, and specific claim terms. *Id.* It can also inform "whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* However, because the prosecution history tracks an "ongoing" negotiation, rather than the "final product" of that negotiation, the prosecution history is warranted less merit than the patent itself for claim construction purposes. *Id.*

In addition to intrinsic evidence, courts may also rely on extrinsic evidence in the claim construction analysis. *Id.* This includes "all evidence external to the patent and prosecution, including expert and inventor testimony, dictionaries, and learned treatises." *Id.* (quoting *Markman*, 52 F.3d at 980). For instance, "expert testimony can be useful to a court for a variety of purposes, such as to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is

4

consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Id.* at 1318. *But see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it."). While extrinsic evidence may be helpful, it is typically "less significant than the intrinsic record in determining the 'legally operative meaning of claim language.'" *Id.* at 1317 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004) (citation omitted)). Nonetheless, courts have the discretion to admit such evidence in a claim construction analysis. *Id.* at 1319. "[I]n weighing all the evidence bearing on claim construction, the court should keep in mind the flaws inherent in each type of evidence and assess the evidence accordingly." *Id.*

### 2. Indefiniteness

Patent law also imposes a definiteness requirement for patent claims. *See* 35 U.S.C.A. § 112 (West) ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention."). The Supreme Court has read Section 112 to require that "a patent's claims . . . inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 911 (2014). Like claim construction, a definiteness analysis evaluates a patent's claims in light of the patent specification, prosecution history, and extrinsic evidence. *Id.* at 911–12; *see Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1381 (Fed. Cir. 2015) ("In the face of an allegation of indefiniteness, general principles of claim construction apply.") (quoting *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1332 (Fed. Cir. 2010)). Further, a determination of a claim's definiteness is made from the perspective of one of ordinary skill as of the time the patent application was filed. *Nautilus*, 572

U.S. at 911. The party challenging the patent's presumptive validity has the burden of proving indefiniteness by clear and convincing evidence and must demonstrate that "a skilled artisan could not discern the boundaries of the claim." *Accentra, Inc. v. Staples, Inc.*, 500 F. App'x 922, 930 (Fed. Cir. 2013) (quoting *Halliburton Energy Servs., Inc. v. M–I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008)).

"Terms of degree" are frequently subject to indefiniteness challenges. On remand from the Supreme Court in *Nautilus*, the Federal Circuit stated that "[c]laim language employing terms of degree has long been found definite where it provided enough certainty to one of skill in the art when read in the context of the invention." *Biosig*, 783 F.3d at 1378 (quoting *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014)). Specifically, the Federal Circuit instructed lower courts to determine "whether the patent provides 'some standard for measuring the degree'" to satisfy the definiteness requirement. *Id.* (quoting *Enzo*, 599 F.3d at 1332). This balances Section 112's demand for clarity and "the inherent limitations of language." *Nautilus*, 572 U.S. at 909.

### III.    PLAINTIFF'S OBJECTION TO "EXHIBIT A"

At the May 21, 2025, *Markman* hearing, Defendant displayed a specific image to the Court on slide 30 of its PowerPoint presentation. [DE 116]. Because this image had not been previously shared with opposing counsel or the Court, Defendant was asked to submit this image to the Court so that it could be added to the record. Defendant did submit the image to the Court as "Exhibit A," but as a part of a larger 60 page document. [DE 115]. Plaintiff objects to this submission because Exhibit A includes other information that was not referenced during the *Markman* hearing. [*Id.*]. The Court sustains the objection. Defendant has corrected its submission: "Exhibit B" only contains the specific image displayed on slide 30 of Defendant's

PowerPoint presentation at the hearing. The Court admits Exhibit B for demonstrative purposes only, consistent with the Court's ruling at the *Markman* hearing. [DE 116-1].

## IV. CLAIM CONSTRUCTION

### 1. "Seed or grain tender"

Below are the parties' proposed constructions:

| Claim Term | Plaintiff | Defendant |
| --- | --- | --- |
| "seed or grain tender" | The preamble is limiting and should be given its ordinary and customary meaning<br><br>No construction necessary | Non-Limiting<br><br>But if found limiting, it should be construed as: "seed or grain carrier or seeding machine" |

#### a. *Analysis*

A preamble is limiting if "it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002). Conversely, it is not limiting if the claim body defines a "structurally complete invention" and the preamble only "state[s] a purpose or intended use for the invention." *Id.*

While there is no litmus test, the Federal Circuit has provided guideposts for determining whether a preamble limits claim scope. *Id.* For example, in the claim's plain text, "dependence on a particular disputed preamble phrase for antecedent basis may limit claim scope because it indicates a reliance on both the preamble and claim body to define the claimed invention." *Id.* Another example is based off the patent's specification. When the preamble recites "additional structure or steps underscored as important by the specification," then the preamble may be limiting. *Id.* The prosecution history may also speak to the preamble. "[C]lear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms

the preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention." *Id.*

In this case, the preamble "seed or grain tender" is not limiting, based on the claims, specification, and prosecution history of the asserted patents. Starting with the plain language of the claim, the body of the claim defines a structurally complete invention. The body of claim 1 of the '940 patent recites all the main components of the invention as described in the specification. The preamble does not recite any essential structure or steps. Deleting the preamble language from the claim would not affect the structure or function of the claimed invention. Moreover, the preamble does not provide an antecedent basis for any term in the claim body. While this alone is not determinative, a lack of antecedent basis supports the conclusion that the preamble is not limiting.

Next, nothing in the specification suggests that the preamble should be construed as a claim limitation. The specification references a "tender" only a few times. *See* '940 Patent, 2:12 and 5:03. These references relate to the "towability" of the present invention, but the specification, in its entirety, does not make this feature an additional or essential structure.

Lastly, the prosecution history does not suggest that the preamble is anything more than an intended use or purpose. Plaintiff's expert references a prior art patent, which was considered by the Examiner, to argue that skilled artisans would be able to distinguish "seed or grain tender" from other agricultural equipment. [DE 86-2, ¶ 65]. Even if that is the case, that prior art patent does not support the conclusion that the present invention should be limited by the preamble "seed or grain tender." Plaintiff does not demonstrate that the patent applicants relied on the preamble language to distinguish the present invention from prior art.

8

b. *Court's Construction*

For the reasons set forth above, the term "seed or grain tender" is not limiting. No construction is necessary.

2. **"Below"**

Below are the parties' proposed constructions:

| Claim Term | Plaintiff | Defendant |
|---|---|---|
| "below" | "Under" | Plain and ordinary meaning |

a. *Analysis*

This Court is not the first to construe this term. A sister court in the Northern District of Iowa previously construed "below" for the asserted patents. *Unverferth Mfg. Co. v. Meridian Mfg.*, Inc., No. 19-cv-4005-LTS, 2020 WL 1919922, at *13-14 (N.D. Iowa Apr. 20, 2020). In that case, the litigants proposed the constructions "directly under" and "lower than." But the court rejected both— "directly under" because it rendered language in the claims as superfluous or nonsensical and "lower than" because it was too broad. The court's ultimate construction was the same that Plaintiff proposes in this case: "under." The Iowa court's construction of this term is relevant and persuasive authority for this Court's analysis. *See Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1338 (Fed. Cir. 1999) (holding that "the interest of consistency" encouraged courts to consider nonprecedential orders for claim constructions of the same claims and patents at issue).

This Court begins its analysis looking at the plain text of the asserted claims. The claims use "below" in two different contexts: "a base mounted *below* said main hopper discharge" and "conveyer hopper is disposed *below* said main hopper discharge." '940 Patent, 5:17 and 5:38. The claims explain that this positional structure is such that the "conveyer hopper" may "receive

9

agricultural product" from the "main hopper discharge." *Id.* at 5:38–39. Plaintiffs argue that this only works if the conveyer hopper is "under" the main hopper discharge; if it is "lower than but spaced away"—which would still be "below"—than the agricultural product would fall from the main hopper, miss the conveyer hopper, and pour onto the ground. [DE 96, page 19]. Defendant, and its expert, argue that a broader definition of "below" can be understood by imagining a "spouting or chutes" system underneath the claimed invention. [DE 99, page 13–14]. While this is not outside the realm of possibility, Defendant's argument is not based on the most straightforward reading of the plain text of the claim.

Next, the Court looks at the specification and prosecution history. There are instances in the specification where "below" and "under" are used interchangeably. *See, e.g.*, '940 Patent, 1:48–50, 1:53–54. Similarly, during the prosecution of a parent patent, the inventors used "below" and "under" interchangeably in correspondences with the Patent Office. *See* [DE 96, page 20]. The interchangeable use of these two terms in the specification and prosecution is not insignificant. While it does not rise to the level of a clear redefinition by the patent applicants, the Court finds it does give some support to Plaintiff's construction. *See Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1329 (Fed. Cir. 2009) ("The interchangeable use of the two terms is akin to a definition equating the two.").

Defendant's briefing largely focuses on judicial estoppel. [DE 95, page 14–17]. In the *Meridian* case, Plaintiff argued that "below" should be construed as "lower than" in the context of the asserted patents. *Meridian,* 2020 WL 1919922. As such, Defendant argues that Plaintiff should be precluded from arguing for an alternative construction in the instant case.

Defendant's argument for judicial estoppel fails because the *Meridian* court did not adopt Plaintiff's proposed construction. "[O]nly positions that are adopted by a prior court are binding

for judicial estoppel purposes." *JVI, Inc. v. Truckform Inc.*, No. 11-6218 FLW, 2012 WL 6708169, at *23 (D.N.J. Dec. 26, 2012) (rejecting judicial estoppel arguments on a claim construction matter). Because Plaintiff's proposed construction of "lower than" was not adopted by the *Meridian* court, Plaintiff is not judicially estopped from arguing for a contrary construction in this case.

Besides its arguments for judicial estoppel, Defendant offers no support for its own proposed construction. *See* [DE 95, page 14–17]. On the other hand, Plaintiff's proposed construction is supported by the intrinsic record and expert testimony, and it is also consistent with a prior construction by another district court. Therefore, the Court adopts Plaintiff's construction.

### b. *Court's Construction*

For the reasons set forth above, the term "below" is construed to mean "under."

### 3. "Vertical"

Below are the parties' proposed constructions:

| Claim Term | Plaintiff | Defendant |
|---|---|---|
| "vertical" | "Generally upright" | Plain and ordinary meaning |

### a. *Analysis*

Two courts in sister districts have previously construed "vertical" for the asserted patents. *Unverferth Mfg. Co. v. Meridian Mfg.*, Inc., No. 19-cv-4005-LTS, 2020 WL 1919922 (N.D. Iowa Apr. 20, 2020); *Unverferth Mfg. Co. v. J&M Mfg. Co., Inc.*, 3:16-cv-2282, (N.D. Ohio Jul. 7, 2017). In both cases, the court's ultimate construction was the same that Plaintiff proposes in this case: "generally upright." Those previous claim construction orders are relevant and persuasive authority for this Court's analysis. *See Burke*, 183 F.3d at 1338 (holding that "the interest of

consistency" encouraged courts to consider nonprecedential orders for claim constructions of the same claims and patents at issue).

Both prior cases discussed "vertical" as a term of relation or comparison, rather than precise direction. In the *J&M* case, the court noted that "[o]utside the study of mathematics, the words vertical and horizontal are commonly used and understood to refer *generally* to an object's orientation as either up-and-down or side-to-side." [DE 96-6, page 7]. In the *Meridian* case, the court stated that "vertical and horizontal . . . are comparative terms used to distinguish axes of rotation and the movement of structures about those axes." [DE 96-11, page 25].

Defendant argues that the construction "generally upright" would confuse a jury and that lay people would readily understand the term "vertical." [DE 90, page 17–18]. But Defendant's position is without support. Moreover, Defendant fails to address, or even acknowledge, the analysis of the Ohio and Iowa courts, which both determined that "generally upright" is the most appropriate construction for this term in the asserted patents.

Based of its own review, this Court finds that Plaintiff's proposed construction is supported by the record. First, the asserted claims use the term in a comparative—rather than an absolute—context. *See e.g.*, '940 Patent, Claim 1 ("first coupling being rotatable in relation to said base about a first vertical axis of rotation" and "first end of said support arm being rotatable in relation to said first coupling about a first horizontal axis of rotation"). Second, the specification teaches that the invention's support arm is adjustable. '940 Patent, 1:65–67 and 3:51–53. This characteristic would not be feasible if the vertical axis was required to be at a precise 90-degree angle relative to the horizon. *See* [DE 86-2, ¶¶ 77–78] (Plaintiff's Expert's Declaration). Therefore, the Court adopts Plaintiff's proposed construction.

### b. *Court's Construction*

For the reasons set forth above, the term "vertical" is construed to mean "generally upright."

### 4. "A base"

Below are the parties' proposed constructions:

| Claim Term | Plaintiff | Defendant |
|---|---|---|
| "a base" | Ordinary and customary meaning, no construction necessary | "a base mounted on the frame" |

### a. *Analysis*

The *J&M* and *Meridian* courts also construed "a base" for the asserted patents. *Unverferth Mfg. Co. v. Meridian Mfg.*, Inc., No. 19-cv-4005-LTS, 2020 WL 1919922 (N.D. Iowa Apr. 20, 2020); *Unverferth Mfg. Co. v. J&M Mfg. Co., Inc.*, 3:16-cv-2282, (N.D. Ohio Jul. 7, 2017). In both cases, the court determined that "a base" did not need a special construction and gave the term its ordinary and customary meaning. That determination is relevant and persuasive authority for this Court's analysis. *See Burke*, 183 F.3d at 1338 (holding that "the interest of consistency" encouraged courts to consider nonprecedential orders for claim constructions of the same claims and patents at issue).

Defendant's proposed construction for the term is without support, and it improperly imports limitations from the specification. While the specification does describe embodiments with "a base mounted on the frame," Defendant's expert admits that "nothing in the specification says that this is the only possible or recommended arrangement." [DE 100, page 15]. Thus, this arrangement cannot be interpreted as a limitation on the claim scope. *See Hill-Rom Servs., Inc. v.*

13

*Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014) ("[W]e do not read limitations from the embodiments in the specification into the claims.").

The *J&M* court stated that "a base" "is a commonly used term, and the jury will have no difficulty understanding its meaning in the context of the patents." [DE 96-6, page 4]. This Court agrees. Nothing in the claim language, specification, or prosecution suggests that this term requires a unique construction. *See Brown v. 3M*, 265 F.3d 1349, 1352 (Fed Cir. 2001) ("These are not technical terms of art, and do not require elaborate interpretation."). Therefore, this Court adopts Plaintiff's proposed construction for this term.

### b. *Court's Construction*

For the reasons set forth above, the term "a base" is given their ordinary and customary meaning.

### 5. "A base mounted below said main hopper discharge"

Below are the parties' proposed constructions:

| Claim Term | Plaintiff | Defendant |
| --- | --- | --- |
| "a base mounted below said main hopper discharge" | The term "below" should be construed as "under." Otherwise, ordinary and customary meaning, no construction necessary | If the Court rejects Par-Kan's proposed construction of "a base," then this term is indefinite |

### a. *Analysis*

Because the Court rejected Defendant's construction of "a base," Defendant argues that the related claims are indefinite because "[they] do not specify what the base is 'mounted' to." [DE 95, page 24]. This Court disagrees. The Federal Circuit has held that "[patent] claims need not recite every component necessary to enable operation of a working device.'" *Markem-Imaje Corp. v. Zipher Ltd.*, 657 F.3d 1293, 1301 (Fed. Cir. 2011). In *Markem-Imaje*, the court offered

14

the analogy: "A claim to an engine providing motive power to a car should not be construed to incorporate a limitation for an exhaust pipe, though an engine may not function without one." *Id.* at 1301. "That a device will only operate if certain elements are included is not grounds to incorporate those elements into the construction of the claims." *Id.* Similarly here, a claim for "a base" structure should not be construed to incorporate a limitation for being "mounted on a frame," even if the base is required to be mounted to something. Nor should the claim be rendered indefinite for not incorporating such a limitation.

Further, Plaintiff, by its expert testimony, demonstrated that a person of ordinary skill in the art would understand the scope of the claim term with reasonable certainty. [DE 86-2, ¶¶ 88–91]. Therefore, the Court adopts Plaintiff's construction.

### b. Court's Construction

For the reasons set forth above, the term "a base mounted below said main hopper discharge" is definite, and no construction is necessary.

### 6. "An approximate center of gravity of said conveyor"

Below are the parties' proposed constructions:

| Claim Term | Plaintiff | Defendant |
| --- | --- | --- |
| "an approximate center of gravity of said conveyor" | Ordinary and customary meaning, no construction necessary | Indefinite |

### a. Analysis

Terms of degree are not fatal to a claim's definiteness. *See Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1378 (Fed. Cir. 2015). However, terms of degree must be accompanied by "objective boundaries" for persons of ordinary skill in the art in the context of the invention. *Id.* Either intrinsic or extrinsic evidence may be sufficient to demonstrate these

objective boundaries. *Id.*; *see Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1344 (Fed. Cir. 2016) (affirming the rejection of indefiniteness arguments and noting that the district court only expressly relied on extrinsic evidence, even though the intrinsic record also supported its conclusion).

A description of a claim limitation's "function" satisfies the definiteness requirement because it provides "objective boundaries" for a person of ordinary skill in the art to determine the scope of a claim. *See Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1368 (Fed. Cir. 2008) (describing a "functional approach" for ascertaining the scope of "about" terms). So the relevant inquiry here is whether evidence, extrinsic or intrinsic, describes the function of the term "an approximate center of gravity of said conveyor," which Defendant challenges as indefinite. *Id.* After reviewing the record, the Court determines that this claim term's "function" is adequately described or ascertainable to satisfy this analysis.

The specification defines the function of "the approximate center of gravity of said conveyer." It states that "[t]he conveyer may be balanced on the pivot point at the location near or at the center of gravity, thereby *permitting the conveyor to be rotated with minimal effort on the part of the operator*." '940 Patent, 2:4–7. In other words, "positioning the coupling at or near the center of gravity of the conveyer" is a function of *minimizing the effort* required to rotate the conveyer. *Id.* at 3:8–11. Moreover, Plaintiff's expert confirmed that this function would have been understood by a person of ordinary skill too. [DE 86-2, ¶¶ 94–95].

The function of "the approximate center of gravity of said conveyer" is adequately described in the patent specification. The Court independently finds that the described function provides sufficient guideposts for ascertaining the claim scope for the term. Further, Plaintiff

offered credible extrinsic evidence—expert testimony—that supports this proposition. Therefore, this claim term satisfies the Section 112 definiteness requirement.

### b. Court's Construction

For the reasons set forth above, the term "an approximate center of gravity of said conveyor" is definite.

### 7. "Proximate"

Below are the parties' proposed constructions:

| Claim Term | Plaintiff | Defendant |
|---|---|---|
| "proximate" | Ordinary and customary meaning, no construction necessary | Indefinite |

### a. Analysis

Defendant equates the term "proximate" with the word "approximate." [DE 95, page 29] ("The term 'proximate' is indefinite for the same reasons that the term 'approximate' is indefinite: it is a subjective term of degree . . . ."). This asserted equivalency is misplaced.

While "approximate" is a term of degree, the '123 Patent's use of the term "proximate" is not. The term "proximate" is used in four instances in the asserted claim. '123 Patent, Claim 10. In each instance, the term is used to distinguish between two alternatives: the first end and second end of a support arm. *See id.* at 6:16, 6:19, 6:26, and 6:37. The term is not being used to describe an estimated distance or any other approximation. Plaintiff's expert confirms this definition of "proximate." He states that "a POSA would have understood that 'proximate' identifies the positions that are closest in relationship to the first and second ends of the support arm." [DE 86-2, ¶ 99]. Further, the expert explains that this relative position would have been understood by a POSA after referencing the numerous, annotated diagrams in the specification,

which show different positions of the support arm on the hopper. [*Id.* ¶ 100] (including Figures 1–3, and 6 of the '123 Patent).

Defendant's arguments for indefiniteness are not on point because the term "proximate" is not used as a term of degree in the asserted patent. Therefore, indefiniteness is not an issue.

### b. *Court's Construction*

For the reasons set forth above, the term "proximate" is definite.

### 8. "A hydraulic piston extending at an *acute angle* relative to a horizontal plane"

Below are the parties' proposed constructions:

| Claim Term | Plaintiff | Defendant |
| --- | --- | --- |
| "a hydraulic piston extending at an *acute angle* relative to a horizontal plane" | Ordinary and customary meaning, no construction necessary | "a hydraulic piston extending at an *angle greater than zero and less than 90 degrees* relative to a horizontal plane" |

### a. *Analysis*

Defendant argues that "an acute angle" is a mathematical term that lay jurors will not understand. [DE 95, page 31]. The Court disagrees. "An acute angle" is not a technical term of art. Nothing in the claim language, specification, or prosecution suggests that this term requires a unique construction. *See Brown v. 3M*, 265 F.3d 1349, 1352 (Fed Cir. 2001) ("These are not technical terms of art, and do not require elaborate interpretation."). Moreover, Defendant nor its expert explain why lay jurors would not understand the term. *See* [DE 95, page 31–34]; [DE 86-10, ¶¶ 51–55]. Because this is a non-technical term, the Court does not need to construe it. *See Phillips*, 415 F.3d at 1314 ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim

18

construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.").

### b. *Court's Construction*

For the reasons set forth above, the term "a hydraulic piston extending at *an acute angle* relative to a horizontal plane" is given its ordinary and customary meaning.

### V. CONCLUSION

The Court adopts the constructions above for the disputed claim terms of the asserted patents. Furthermore, the Parties should ensure that all testimony that relates to the terms addressed in this order is constrained by the Court's reasoning. However, in the presence of the jury the Parties should not expressly or implicitly refer to each other's claim construction positions and should not expressly refer to any portion of this memorandum that is not an actual construction adopted by the Court. The references to the claim construction process should be limited to informing the jury of the constructions adopted by the Court.

SO ORDERED.

ENTERED: August 13, 2025

/s/ GRETCHEN S. LUND
Judge
United States District Court