UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNVERFERTH MFG CO INC,

    Plaintiff,

    v.                                                                Case No. 3:23-CV-653-GSL-JEM

PAR-KAN CO., LLC,

    Defendant.

## OPINION AND ORDER

This matter is before the Court on Plaintiff/Counter-Defendant Unverferth Manufacturing Co., Inc.'s ("Unverferth") Motion to Exclude Defendant/Counterclaimant Par-Kan Co., LLC's ("Par-Kan") Final Invalidity Contentions [DE 175]. The motion is fully briefed [*see* DE 176; DE 184; DE 186], oral argument was held on April 28, 2026 [DE 199], and the motion is now ripe for judgment. For the reasons explained below, Unverferth's Motion to Exclude is **GRANTED IN PART, DENIED IN PART**.

## BACKGROUND

### I.    Patents-in-Suit

This case concerns a patent infringement suit involving U.S. Patent Nos. 8,967,940 ("the '940 patent") and 9,745,123 ("the '123 patent") (collectively, "the asserted patents" or "patents-in-suit"), both of which are owned by Unverferth.[1] [DE 2 at ‖‖ 8–11]. The asserted patents are

---

[1] According to Unverferth, it manufactures, uses, sells, and offers for sale seed tender products practicing the asserted patents. [DE 2 at ‖ 12]. Some of these products include the Seed Runner 2755, Seed Runner 2755XL, Seed Runner 3755, Seed Runner 3755XL, Seed Runner 3955XL, Seed Runner 3966DXL, Seed Runner 4955DXL, Seed Runner 5000, Seed Pro 200, Seed Pro 210, Seed Pro 400, Seed Pro 410, and Seed Pro 410XL. [*Id.*; *see also* DE 86-2 at 17].

directed to seed or grain tenders [DE 86-2 at 12–20], and the patented technology is used to transfer seed or grain from bulk storage to a planter [*id.* at ⁋ 32]. While this transfer was previously performed manually [*id.* at ⁋ 34], the advent of this technology now allows for these transfers to be conducted more efficiently and safely [*id.* at ⁋ 35]. The inventions described in the asserted patents have a support arm and conveyor that may be moved side-to-side or up-and-down. [*Id.* at ⁋⁋ 48, 51]. This enables the invention to move into "loading" and "unloading" positions, allowing farmers to easily operate the machines for receiving seed from a bulk source and discharging the seed into desired planting equipment. [*Id.*].

The '940 patent was filed on July 3, 2012, and claims priority to U.S. Patent No. 8,221,047 ("the '047 patent"), filed on February 15, 2008, and Provisional Patent Application No. 60/901,321 ("the '321 provisional application"), filed on February 15, 2007. [DE 86-2 at ⁋ 30]. The '940 patent was issued on March 3, 2015, and is a continuation of the '047 patent. [*Id.*]. The '123 patent was filed on January 27, 2015, issued on August 29, 2017, and claims priority to the '047 patent, the '940 patent, and the '321 provisional application. [*Id.*; *see also* DE 2 at ⁋ 14]. Because the asserted patents claim priority to the '321 provisional application, the collective priority date (*i.e.*, date of invention) for the asserted patents is February 15, 2007. [DE 86-2 at ⁋ 31].

## II.    **Procedural History**

Unverferth initiated this suit on July 11, 2023, alleging Par-Kan infringed upon the '940 and '123 patents through the unauthorized manufacturing, use, sale, and/or offer to sell inventions covered by those patents. [*See* DE 2]. Following the completion of the pleading phase, and pursuant to Northern District of Indiana Local Rule 3-1, the parties began filing their initial infringement and invalidity contentions. Relevant to this matter, Par-Kan filed its

preliminary invalidity contentions on November 21, 2024. [*See* DE 178-3]. The Court conducted

a *Markman* claim construction hearing on May 21, 2025 [DE 114], and Par-Kan subsequently

filed supplemental invalidity contentions a few months later on October 22, 2025 [DE 184 at 19].

On February 4, 2026, Par-Kan filed its final invalidity contentions. [*See* DE 178-1 to 178-2].

These final invalidity contentions, which purportedly contain both noncompliant contentions and

amendments not previously disclosed in the preliminary invalidity contentions, sparked the

present motion to exclude. Specifically, Unverferth seeks to exclude the following from Par-

Kan's final contentions: (1) obviousness combinations going to both the '940 and '123 patents;

(2) invalidity theories allegedly premised on a claim construction inconsistent with the Court's

*Markman* Order [*see* DE 124]; (3) belated invalidity theories relying on (a) the Hiniker 5800

Manual, (b) the CrustBuster 160/240 Seed Tender, and (c) the Friesen 240 Seed Tender; and (4)

belated on-sale bar and public use invalidity theories. [*See* DE 175 at 2].

## **LEGAL STANDARD**

Because district courts possess the inherent power to manage their own docket, *see*

*Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1321 (Fed. Cir. 2016)

(citing *Ryan v. Gonzalez*, 568 U.S. 57, 74 (2013)), they are authorized to "consider and take

appropriate action to facilitate the just, speedy, and inexpensive disposition of all matters before

them." *Id.* (internal quotation marks omitted) (citing Fed. R. Civ. P. 1; Fed. R. Civ. P. 16). A

district court's local patent rules, which "are essentially a series of case management orders," are

one such means of assisting the court in accomplishing this task. *Id.* at 1320 (quoting *Keranos,*

*LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1035 (Fed. Cir. 2015)).

The Federal Circuit recognizes that some local patent rules are intended to serve an

objective which "has been difficult to achieve through traditional discovery mechanisms such as

contention interrogatories." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006). These rules are designed specifically to "require parties to crystallize their theories of the case early in the litigation to prevent the 'shifting sands' approach to claim construction." *See Keranos*, 797 F.3d at 1035 (internal quotation marks omitted); *see also Monolithic*, 467 F.3d at 1365–66 (noting the local patent rules require the parties to provide "early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery"). In serving this purpose, the local rules "seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories." *Monolithic*, 467 F.3d at 1366. Accordingly, where a party fails to abide by the local patent rules, the court is permitted to impose any "just" sanction, including "refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence." *Id.* at 1363 (citing Fed. R. Civ. P. 16(f); Fed. R. Civ. P. 37(b)(2)(B)).[2]

The interpretation and application of a district court's local patent rules are reviewed by the Federal Circuit under an abuse of discretion standard. *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1320 (Fed. Cir. 2016) (citing *id.* at 1366–67). Decisions enforcing the Court's local patent rules will be affirmed unless it is "clearly unreasonable, arbitrary, or fanciful; based on erroneous conclusions of law; clearly erroneous; or unsupported by any evidence." *Id.* at 1324 (quoting *Monolithic*, 467 F.3d at 1366–67). This "highly deferential review standard" is provided to the district court's interpretation and enforcement of its local

---

[2] The Rule 37 language cited by the Federal Circuit in *Monolithic* has changed from Subsection (b)(2)(B) to (b)(2)(A)(ii).

rules "so as not to frustrate local attempts to manage patent cases according to prescribed guidelines." *Id.* (quoting *Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 774 (Fed. Cir. 2002)).

## DISCUSSION

### I.     Local Patent Rules (Invalidity Contentions)

Before proceeding to the merits of Unverferth's motion, it is helpful to first review this district's rules governing invalidity contentions. Much like the Court's local rules regarding infringement contentions, the process for serving preliminary and final invalidity contentions works in generally the same fashion, albeit with different requirements. For example, upon receipt of the asserting party's preliminary infringement contentions, each party opposing a patent-infringement claim must serve its preliminary invalidity contentions, which must include a chart (or charts) identifying each allegedly invalid claim and each item of prior art that either anticipates the claim or renders it obvious. N.D. Ind. L.P.R. 3-1(e). The claim charts must contain the following contentions: (1) how and under what statutory basis the item qualifies as prior art; (2) whether the prior art item anticipates or renders each allegedly invalid claim obvious; (3) a specific identification of where in the prior art item each limitation of each allegedly invalid claim is found; (4) why, if obviousness is alleged, the prior art renders the allegedly invalid claims obvious, including why combining the identified items of prior art demonstrate obviousness and why a person of skill in the art would find the allegedly invalid claim obvious in light of such combinations (*e.g.,* reasons for combining the references); and (5) a statement identifying with specificity any other asserted grounds for invalidity of any allegedly invalid claims, including contentions raised under 35 U.S.C. §§ 101, 112, or 251. N.D. Ind. L.P.R. 3-1(e)(1)–(5).

5

Following claim construction, each accused infringer must serve on all other parties its final invalidity contentions. N.D. Ind. L.P.R. 5-1(b)(1). Because any contentions not contained in the final list of contentions are barred from being presented at trial, each party's final invalidity contentions must contain the final statement as to all contentions. N.D. Ind. L.P.R. 5-1(b)(2). If a party's final invalidity contentions identify any additional prior art, the amendment must be supported by good cause and the accused infringer must include "a separate statement providing the specific grounds establishing good cause for the amendment." N.D. Ind. L.P.R. 5-1(b)(3). The party asserting infringement may seek to exclude the amendment on grounds that good cause is nonexistent. N.D. Ind. L.P.R. 5-1(b)(4). Finally, any unopposed amendments will be deemed effective. N.D. Ind. L.P.R. 5-1(b)(6).

## II.        Inconsistent Claim Construction Contentions

The first set of contentions Unverferth seeks to exclude are those it contends directly contradict the Court's *Markman* Order. [DE 176 at 17]. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009) ("Once a district court has construed the relevant claim terms, and unless altered by the district court, then that legal determination governs for purposes of trial. No party may contradict the court's construction to a jury."). Specifically, Unverferth explains that Par-Kan's contentions conflict with the Court's construction of the term "below," which the Court defined as meaning "under." [DE 176 at 17 (citing DE 124 at 9–11)]. As an example of this conflict, Unverferth identifies Par-Kan's contention asserting that a "'mounting plate' located on the trailer tongue of the Hiniker 4800 device is a 'base' that is 'positioned or mounted below [(under)] the main hopper.'" [*Id.* (quoting DE 178-2 at 5–6); *see also* DE 178-2 at 48, 51]. Unverferth claims the "mounting plate" on the Hiniker 4800 device is

6

not "under" the main hopper, and thus it is improper for Par-Kan to raise this contention in this manner. [DE 176 at 18].

In response, Par-Kan acknowledges it inadvertently repeated the above-mentioned line from its preliminary invalidity contentions (filed prior to the Court's *Markman* Order) and that this line was removed in an amended version of the final invalidity contentions. [DE 184 at 15; *see* DE 184-4]. Par-Kan states the amended contention for Hiniker 4800 now relies exclusively on secondary references (Furrer and/or BTS290) for the "below" limitation. [DE 184 at 15; *see* DE 184-4 at 7–8 ("Furrer discloses a seed tender comprising . . . a 'turret' (base) mounted below the main hopper . . . . BTS290 likewise discloses a base mounted below the main hopper discharge.")]. Despite this concession, Par-Kan asserts the claim construction issue is now moot, both because Par-Kan removed the above-mentioned line and because Unverferth's argument is overly broad and "[b]ased on a single cherry-picked sentence, out of more than a thousand pages of detailed claim charts appended to Par-Kan's final invalidity contentions." [DE 184 at 15].

The Court agrees that this issue is moot. First, Unverferth only specifies the "mounting plate" line as being inconsistent with the Court's *Markman* Order, a line Par-Kan acknowledged was inconsistent and has since dealt with accordingly. Although Unverferth broadly seeks the exclusion of *any* contentions that are inconsistent with the Court's *Markman* Order—of which there may be more than just the "mounting plate" contention—Unverferth does not identify which contentions those are. Nor is there a way for the Court to make that determination without tediously combing through each contention on its own time and speculating as to whether those contentions are construed harmoniously with the Court's *Markman* Order. And second, the issue was not discussed further in either Unverferth's reply brief [*see* DE 186] or during oral argument

[*see* DE 199], suggesting Unverferth either is content with Par-Kan's amendment or has decided to abandon the issue altogether. Thus, there is nothing more for the Court to consider.

### III.    <u>**Obviousness Contentions**</u>

Next, Unverferth seeks to exclude Par-Kan's obviousness contentions on the basis that (1) Par-Kan's contentions "present catch-all theories encompassing ***millions*** of possible obviousness prior art permutations, such that Unverferth lacks notice of the theories Par-Kan plans to pursue in expert discovery and trial"; and (2) these contentions run afoul of the local patent rules because they do not specify *why* combining prior art items would render the asserted patents obvious or *why* a person of ordinary skill in the art would find the patents obvious in light of the combination. [DE 176 at 6–7 (emphases in original)]. But much like the claim construction argument before, Unverferth's sweeping request to exclude for lack of specificity and noncompliance with the local patent rules leaves little for the Court to work with where Unverferth generally fails to identify *which* specific contentions are deficient and for *what* reason.

According to the broad wording in parts of Unverferth's brief, it seems Unverferth seeks to exclude all of Par-Kan's invalidity contentions. [*See, e.g.*, *id.* at 9 ("Par-Kan's contentions fail to identify with specificity any obviousness theories."); *id.* at 11 ("By providing overbroad combinations, Par-Kan has violated the spirit and intent of the invalidity contention requirement and failed to put Unverferth on notice of its invalidity theories. As such, Par-Kan's voluminous web of potential obviousness theories should be excluded."); *id.* at 15 ("For these reasons alone, Par-Kan's invalidity theories in its final invalidity contentions should be excluded.")]. While Unverferth certainly could have examined each individual contention in its brief, even if that amounted to the entirety of Par-Kan's asserted invalidity theories, Unverferth did not do that

8

here. In large part, Unverferth makes an argument for exclusion and lumps several contentions together without dissecting how each of those individuals contentions fail. Further, it appears the Court is not the only one to read Unverferth's argument in this fashion, as Par-Kan also recognized the potential that should the Court grant Unverferth's motion in its entirety, this could leave Par-Kan with little to no contentions at all, thereby prompting Par-Kan to seek out the Court's "guidance" on how to proceed.[3]

It is not the Court's job to parse through each contention and gauge whether that contention should stay or go. It was made clear during the hearing, and both parties acknowledged, that they could—or perhaps should—have met and conferred earlier in the case as to whether Par-Kan's invalidity contentions needed additional clarity and, if so, in what way. That being said, this portion of Unverferth's motion is not entirely void. Because Unverferth does identify at least some specific contentions with examples of how those contentions either fail to assert the specific combinations being relied on or are noncompliant with the local patent rules, the Court can consider these identified contentions and the grounds for their exclusion.

### A. Specificity of Asserted Combinations

Beginning with the issue of specificity, Unverferth argues that Par-Kan identifies twenty-six prior art references and thirty-one additional claim charts supporting either an anticipation or obviousness-based invalidity theory and purporting to make overbroad and non-limiting "specific assertions" of prior art combinations [*Id.* at 11]. For example, in contention A1, Par-Kan alleges:

---

[3] This request for "guidance" of course came after Par-Kan introduced, for the first time in the middle of the motion hearing, a potential narrowing of contentions never previously disclosed to Unverferth or the Court. [*See* DE 199]. Recognizing that this short-sighted approach would not suffice, Par-Kan thereafter sought guidance from the Court on how to proceed should each of its contentions be stricken.

> The Hiniker Company 4800 Series Air Seeder ("Hiniker 4800" or "Hiniker Product") anticipates or renders obvious the asserted claims of the '123 patent. In addition, the asserted claims would have been obvious over Hiniker 4800 alone **or in view of other prior art cited in these invalidity contentions, such as** U.S. Patent No. 7,500,817 ("Furrer"), U.S. Patent No. 5,888,044 ("Baskerville"), U.S. Patent No. 3,498,483 ("Forsyth"), U.S. Patent No. 4,491,216 ("Sawby"), Convey-All BTS290 Seed Tender ("BTS290") (or similar models such as the BTS240 or BTS360, which have a similar conveyor mounted under the discharge area of the hopper), U.S. Patent No. 3,498,483 ("Meharry"), U.S. Patent Publication No. 2005/0158155 ("Johnson"), Morris Industries Ltd. 7000 Series Air Cart Operator's Manual ("Morris"), Flexi-Coil 40 Series Air Cart ("Flexi-Coil 40"), Flexi-Coil Series Air Cart ("Flexi-Coil 50"), and/or Convey-All Swinger / BTS-150 / BT-150 / BT-1500 ("Convey-All Swinger").

[*Id.* (quoting DE 178-1 at 33 (emphasis added))]. As another example, Unverferth highlights where Par-Kan claims it is not limited to the universe of references listed in the final contentions, but rather can rely on secondary references and commercial embodiments as well. [*Id.* at 11–12].

Specifically, Par-Kan states:

> Par-Kan relies upon not only the prior art disclosed in these Final Invalidity Contentions but also **any commercial embodiments and accompanying literature (or other evidence and/or witness testimony)** of the various assignees that correspond to the respective disclosures found within the prior art disclosed in these contentions.

[*Id.* at 12 (quoting DE 178-1 at 7 (emphasis added))]. Finally, Unverferth identifies five prior art references mentioned in conjunction with contentions A16 and B16 but which are not included or discussed in any of the respective claim charts. [*Id.* at 12 n.2]. These references include Beck, Meyer, Hitch, Cochran, and Hundeby.[4] [*Id.* (citing DE 178-1 at 9, 17–18)].

In response, Par-Kan contends it (1) only identifies sixteen primary prior art references, which it states is fewer than the number of claims asserted by Unverferth in its infringement

---

[4] Unverferth is correct that the Beck, Meyer, Hitch, Cochran, and Hundeby references are only mentioned once in the respective claim charts and are never further dissected or disclosed. Further, after Unverferth raises this issue in its opening brief, the references are never discussed further by either party. Accordingly, the Court finds that these references are noncompliant for insufficient disclosure and, because Par-Kan never addresses them in its brief, that Par-Kan has abandoned them. These references shall therefore be excluded.

10

contentions; (2) identifies secondary references that teach specific features of the asserted claims, and (3) provides alternative combinations for basic mechanical features, which it argues is necessitated by Unverferth's refusal to acknowledge that any features are disclosed by the prior art. [DE 184 at 8]. Par-Kan further argues that this district's local patent rules do not place a ceiling on the limit of prior art references or combinations that may be asserted, and thus Unverferth's unreasonableness argument, along with the caselaw Unverferth cites in support, is both distinguishable and without merit. [*Id.*]. Finally, Par-Kan asserts that exclusion is an improper remedy, but even if it was proper, Unverferth waived its right to exclude for failure to challenge Par-Kan's preliminary invalidity contentions. [*Id.* at 13–14].

The Court will first address Par-Kan's waiver argument before assessing the specificity and quantity of its asserted obviousness theories.

### 1. Waiver

It is first worth noting that Par-Kan raises various waiver arguments as to each issue the Court will be discussing. These arguments are apparently directed at Unverferth's failure to challenge any deficiencies in the preliminary invalidity contentions under Local Patent Rule 3-1(e). These arguments, however, miss the mark entirely. While it is true that (1) Unverferth cites to the Court's local patent rules governing *preliminary invalidity contentions*—which the Court will discuss further in addressing noncompliance, and (2) the parties could have met and conferred to address the clarity of Par-Kan's contentions earlier in the case—as the Court noted above, this is not fatal to the ultimate right to challenge Par-Kan's *final invalidity contentions*.

First, Local Patent Rule 5-1(b)(5) permits motions to exclude within fourteen days of receiving the final invalidity contentions. Par-Kan's final invalidity contentions were served on February 4, 2026, and Unverferth's Motion to Exclude [DE 175] was filed on February 18, 2026,

placing it within that fourteen-day window and thus making it timely.[5] This distinguishes Unverferth's motion from the cases cited by Par-Kan in its response, where untimeliness was clearly a factor in finding the right to exclude waived. *Cf. Lipocine Inc. v. Clarus Therapeutics, Inc.*, 2020 WL 4794576, at *10 (D. Del. Aug. 18, 2020) (denying motion to strike invalidity contentions where plaintiff waited a month to challenge defendant's inequitable conduct contention); *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 2015 WL 1848524, at *2 (E.D. Tex. Jan. 23, 2015) (finding the right to strike defendant's contentions was waived where plaintiff waited two months after receiving defendant's second amended contentions).

Second, even where a remedy is absent from a court's local patent rules to address lack of specificity (*i.e.*, notice) and noncompliance, as is the case here, challenges to a party's final invalidity contentions may nonetheless be made and entertained under the Federal Rules of Civil Procedure. *See Changzhou Kaidi Elec. Co. v. Okin Am., Inc.*, 112 F. Supp. 3d 330, 336–39 (D. Md. 2015) (striking vague and noncompliant invalidity contentions under the Federal Rules of Civil Procedure). As noted previously, local patent rules are "essentially a series of case management orders," and courts "may impose any 'just' sanction for the failure to obey a scheduling order, including refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting a party from introducing designated matters in evidence." *Monolithic*, 467 F.3d at 1363; *see* Fed. R. Civ. P. 16(f); Fed. R. Civ. P. 37(b)(2)(A)(ii). Moreover, the specificity and compliance requirements of the Court's local patent rules, *see* N.D. Ind. 1-1(b), 3-1(b), have been likewise analogized to the disclosure requirements under Federal Rule Civil Procedure 26(a), leaving additional room for review. *See,*

---

[5] Although the fourteen-day window for excluding final invalidity contentions falls under Local Patent Rule 5-1(b)(4) and (5), which governs "good cause" challenges, the timeliness of Unverferth's motion is nonetheless clear.

12

*e.g.*, *Tyco Healthcare Grp. LP v. Applied Med. Res. Corp.*, 2009 WL 5842062, at \*3 (E.D. Tex. Mar. 30, 2009) (observing that a party's failure to comply with disclosure requirements in the local patent rules, "unless substantially justified or harmless, [often] means the evidence will be excluded").

Thus, taken together, the Court finds no basis to conclude that Unverferth waived its right to challenge Par-Kan's final invalidity contentions.

### 2. *Quantity of Asserted References and Combinations*

Having addressed Par-Kan's waiver argument, the next step is to assess the number of obviousness combinations Par-Kan asserts in its final contentions. While some courts' local patent rules limit the number of prior art references or combinations that may be asserted without leave in a party's invalidity contentions, *see, e.g.*, D. Utah L.P.R. 2.4(d)(2) (limiting prior art references to twelve per asserted patent); N.D. Ill. L.P.R. 2.3(b)(1), 3.1(b) (limiting invalidity contentions to twenty-five prior art items per asserted patent),[6] most courts' rules—including this Court's—contain no such limit, *see* N.D. Ind. L.P.R. 3-1(e), 5-1(b). Despite this, many courts

---

[6] The Northern District of Illinois appears to have the most robust restrictions on the quantity of prior art items a party may assert in its invalidity contentions. For example, under Local Patent Rule 2.3, a party may assert up to twenty-five prior art references, with particularity, in its preliminary invalidity contentions. And under Local Patent Rule 3.1, which governs the final invalidity contentions, the following restrictions or conditions are imposed on both the number and types of references that may be asserted:

> Each party asserting invalidity or unenforceability of a patent claim shall serve on all other parties, at the same time that the Final Infringement Contentions required by LPR 3.1(a)(2) are served, "Final Unenforceability and Invalidity Contentions" containing the information required by LPR 2.3 (b) and (c). Final Invalidity Contentions may rely on more than twenty-five (25) prior art references only by order of the Court upon a showing of good cause and absence of unfair prejudice to opposing parties. For each claim alleged to be invalid, the Final Unenforceability and Invalidity Contentions are limited to four (4) prior art grounds per claim and four (4) non-prior art grounds. No claim asserted to be infringed shall be subject to more than eight (8) total grounds per claim. Each of the following shall constitute separate grounds: indefiniteness, lack of written description, lack of enablement, unenforceability, and non-statutory subject matter under 35 U.S.C. § 101. Each assertion of anticipation and each combination of references shall constitute separate grounds.

N.D. Ill. L.P.R. 3.1(b).

nonetheless consider the reasonableness behind the number of prior art references or combinations that a party wishes to raise, particularly with respect to whether the purpose of providing fair notice to the patentee of the defending party's specific invalidity theories is impeded. Put differently, manageability is the key consideration. *See, e.g.*, *Bos. Sci. Corp. v. Cook Med. LLC*, 2023 WL 3585626, at *2 (S.D. Ind. May 22, 2023) (emphases in original) ("While the Court has limited the *total* number of *references* on which Cook may rely, Cook has not been required to disclose the specific combinations it plans to assert at trial. *Reasonableness* is the issue here."); *Seong v. Bedra, Inc.*, 2023 WL 8072050, at *5 (N.D. Ill. Mar. 24, 2023) ("The final invalidity contentions should shape the case for trial. They should not saddle the opposing party with thousands of prior-art references or generic arguments."); *Celgene Corp. v. Hetero Labs Ltd.*, 2021 WL 3701700, at *20 (D.N.J. June 15, 2021) ("There are hundreds, if not thousands of possible combinations that could be arrived at using Defendants' disclosure of their theories of the case in the invalidity contentions. The vague, catch-all reservations of rights to combine anything disclosed with anything else disclosed in the invalidity contentions does not accomplish the purpose of the Local Patent Rules."); *Finjan, Inc. v. Proofpoint, Inc.*, 2015 WL 9460295, at *2 (N.D. Cal. Dec. 23, 2015) ("Mixing and matching references from a broad 'menu' . . . would not advance the scheduling order's goal of narrowing the issues before trial to a manageable number of specific of specific obviousness combinations of which both parties have explicit notice."); *Pers. Audio, LLC v. Togi Ent., Inc.*, 2014 WL 12617798, at *1–2 (E.D. Tex. Aug. 6, 2014) (finding defendants "failed to put Plaintiff on notice for the bulk of the thousands of possible combinations that result from the broad language in Defendants' invalidity contentions" because "exemplary combinations" do not "serve the notice function of the invalidity contentions as to every possible combination of a universe of references").

Likewise, it is routine among courts to impose early on in the litigation fact-specific restrictions on the quantity of prior art items raised where doing so will streamline the management of the case. *See, e.g.*, *Plastipak Packaging, Inc. v. Premium Waters, Inc.*, 2021 WL 719029, at *1 (W.D. Wis. Feb. 24, 2021) (limiting the defendant to twenty-one total invalidity contentions across twenty-one claims, wherein each obviousness combination constituted one contention); *Biedermann Techs. GmbH & Co. KG v. K2M, Inc.*, 2020 WL 1648482, at *3 (E.D. Va. Feb. 18, 2020) (limiting defendant to five obviousness combinations per claim); *Oil-Dri Corp. of Am. v. Nestle Purina PetCare Co.*, 2018 WL 2765952, at *3 (N.D. Ill. June 9, 2018) (limiting final invalidity contentions to four invalidity grounds per claim, with each assertion of anticipation and each combination of references constituting separate grounds); *Digit. Reg of Tex., LLC v. Adobe Sys., Inc.*, 2014 WL 4090550, at *9 (N.D. Cal. Aug. 19, 2014) (noting the limitation of defendant's invalidity contentions to "three references or combinations per patent claim").

The *Boston Scientific* decision demonstrates these principles concretely. There, a 2017 court order required the defendant to reduce its asserted prior art to no more than twenty-four references, with the understanding that both the patentee and defendant would continue narrowing the number of asserted claims and prior art as the case progressed. 2023 WL 3585626, at *1. Six years later, the plaintiff moved to compel the disclosure of the defendant's obviousness grounds that would be presented at trial. *Id.* In dissecting the status of the defendant's invalidity contentions, the court explained that a specific number of obviousness combinations was never previously ordered by the court, and thus the defendant "still reserve[d] the right to assert hundreds of potential obviousness combinations at trial." *Id.* at *2. One such example of this included the assertion that a claim in the relevant patent was obvious in light of one primary

15

prior art reference "alone *or* in combination with *one or more* of four prior art documents, and in further combination with *one or more* of five prior art documents," an assertion which could theoretically yield more than two hundred possible obviousness combinations. *Id.* (emphases in original). The court further explained that "[s]imply limiting [the defendant] to three obviousness grounds per claim without actually requiring it to disclose the specific combinations would thus be meaningless" because the plaintiff "would still have to waste valuable time preparing for countless combinations, all but three of which would ultimately *not* be (and could not be) asserted at trial." *Id.* (emphasis in original). This, the court found, would be unreasonable. *Id.* Further, by ordering a narrowing of the specific combinations asserted, the court found there would be no prejudice to the defendant because the defendant's only obligation was to provide reasonable notice of what combinations would *actually* be asserted at trial, regardless of their success. *Id.*

Here, the Court is convinced that Par-Kan's invalidity contentions are too broad and fail to provide any specificity as to which obviousness combinations Par-Kan plans to assert at trial. A quick look at Par-Kan's contentions reveals that each contention includes a primary prior art reference alongside a varying list of additional prior art references, with the total number of references cited in each contention (including the primary reference) ranging from seven to fourteen. [*See* DE 176 at 11 (quoting DE 178-1 at 33, citing Exs. A-2 to B-16)]. Notably, it is Par-Kan's broad wording that tips the Court off, as *each contention* states that the primary reference would invalidate the relevant patent either "alone **or in view of other prior art cited in these invalidity contentions**," before introducing each list of references with the non-exhaustive phrase "such as." There is no indication whatsoever of which *specific* combinations *will actually be asserted*.

16

Unverferth claims this theoretical universe of combinations could result in millions of possible combinations. Whether this is true, or whether the result is only in the hundreds or thousands, is immaterial. The reality is that the universe of combinations, as they currently stand, is far beyond those in the cases cited above, falls far below the necessary threshold of providing adequate notice to Unverferth and its experts of which combinations will *actually be asserted*, and is too astronomical to bring in front of a jury for trial.

But what's even more concerning is that this is only speaking to the actual references identified in the contentions themselves. As Unverferth points out, Par-Kan further claims to rely on *any* commercial embodiments, accompanying literature, or other evidence corresponding to disclosures found within the identified prior art. [*Id.* at 12 (quoting DE 178-1 at 7)]. Absent good cause, it is understood that a party may generally not assert brand new invalidity theories if they were not previously disclosed in the party's invalidity contentions. N.D. Ind. L.P.R. 5-1(b)(2). *See Guangzhou Yucheng Trading Co. v. Dbest Prods.*, 644 F. Supp. 3d 637, 667 (C.D. Cal. 2022) (finding under the local patent rules that defendant "may not rely on new theories of invalidity that were not disclosed in its invalidity contentions"); *cf. Am. Fireglass v. Moderustic, Inc.*, 365 F. Supp. 3d 1062, 1074 (S.D. Cal. 2019) (emphasis in original) (noting that while brand new invalidity theories are barred if not previously disclosed, "citation to previously undisclosed references may be permissible" if "used to *support* a theory of invalidity that has been disclosed in a party's invalidity contentions"). Here, it is unclear whether Par-Kan intended for these outside embodiments and evidence to serve as brand new invalidity theories or merely as support for its existing theories. Regardless, based on the discussion above there is no way for Unverferth, the Court, or a jury to know which specific references will be relied on or how they would be asserted.

For these reasons, the Court finds that Par-Kan's contentions fail to satisfy the notice and disclosure requirement of the local patent rules.

### 3. Appropriate Remedy

Having determined that Par-Kan's contentions fail to notify Unverferth of the specific combinations Par-Kan intends to assert at trial, the Court must now determine the most appropriate remedy. As stated previously, Unverferth seeks to exclude these contentions outright. In contrast, Par-Kan argues that exclusion is a "drastic sanction" and that at most it should be permitted an opportunity to amend the contentions. [DE 178 at 2 (citing *Noco Co. v. SmarTech Prods., Inc.*, 2020 WL 1890696, at *5 (N.D. Ohio Apr. 16, 2020)), 10].

At the outset, it is worth noting that exclusion is not so draconian that it is outside the Court's toolset. Recently, in *ArrMaz Products v. Rieth-Riley Construction Co.*, the Court granted portions of the parties' competing motions to exclude the others' final contentions, excluding in particular an additional contract from the patentee's infringement contentions and references intended to provide background on the state of the prior art from the defendant's invalidity contentions. 2026 WL 607543, at *17 (N.D. Ind. Mar. 4, 2026). That being said though, the circumstances there were different. The Court excluded these references with the understanding that discovery was complete and the parties had already filed their initial briefs in support of summary judgment. And while we are beyond the early stages of the case where courts typically narrow a party's contentions, the Court is equally cognizant that discovery here is still ongoing. Notably, expert discovery—for whom the contentions will likely impact the most—is months away from completion.

Moreover, the Court is aware that adopting either party's extreme position in full would force the Court into choosing between two equally undesirable alternatives. On the one hand,

18

eliminating each overly broad contention, as Unverferth seeks, would effectively annihilate Par-Kan's case. *See Seong*, 2023 WL 8072050, at *6 (internal citation omitted) ("It is a 'severe sanction' to strike a party's final invalidity contentions. So, courts typically solve the problem with a less draconian remedy. The idea is to fix, rather than destroy."). Thus, outright exclusion of Par-Kan's entire set of contentions is not the most appropriate or "just" sanction available. *See* Fed. R. Civ. P. 16(f). On the other hand, accepting Par-Kan's position that there is sufficient notice and no undue prejudice to Unverferth is both disingenuous and equally unworkable. Allowing the obviousness contentions to remain as-is, or allowing an amendment with the same quantity of asserted references and combinations, would only serve to defeat the underlying purpose of requiring disclosure in the local patent rules, would slow down the management of this case immeasurably, and would further condone such vagueness in the future.

Instead, the approach taken in *Boston Scientific*—an ordered narrowing of the asserted prior art combinations—avoids these extremes, is aligned with the notice policy of the local patent rules, and is "just" under the circumstances. *See In re Katz Interactive Cell Processing Pat. Litig.*, 639 F.3d 1303, 1313 (Fed. Cir. 2011) (noting a district court's "broad discretion" to manage cases expeditiously); *see also* N.D. Ind. 1-1(a) (allowing the court to depart from the local patent rules in exceptional circumstances). There is a bountiful harvest of prior art references to choose from under each contention, and thus a sufficient opportunity for Par-Kan to plant the seeds for its *specific* trial strategy. Further, by ordering Par-Kan to narrow its obviousness references and combinations for each contention, this will provide Unverferth with a concrete opportunity to prepare its experts accordingly.

Therefore, barring the exclusion of a particular prior art reference under a separate ground for removal as addressed below, Par-Kan will be required to narrow the number of obviousness references and/or combinations it plans on asserting at trial.

### B. Noncompliance with Local Patent Rules

The next issue to discuss is whether Par-Kan's obviousness contentions comply with the Court's local patent rules. Recently, the Court explained in *ArrMaz* that parties moving forward are expected to comply with the plain letter of the rules as explicitly detailed by Local Patent Rule 1-1(b), and that the failure to do so could result in a sanction to the noncompliant party, particularly through the removal of noncompliant contentions. *See ArrMaz*, 2026 WL 607543, at *3.[7]

First, Unverferth argues that Par-Kan fails to identify features or page numbers in several of the references included in the obviousness contentions. [DE 176 at 15]. As an example, Unverferth refers to a portion of contention A1 asserting the Hiniker 4800 as a lead obviousness reference over independent claim 10 of the '123 patent. [*Id.* (citing DE 178-1 at 36)]. Par-Kan asserts that the Hiniker 4800 reference would render claim 10 obvious either alone or in view of the various other references charted in the invalidity contentions, such as Morris, Concord 2250, Convey-All Swinger, Meharry, or Baskerville. [*Id.* (citing DE 178-1 at 62)]. Unverferth claims,

---

[7] Despite both parties' overt noncompliance with the rules in *ArrMaz*, the Court nonetheless addressed their exclusion arguments—including for noncompliance—as a "matter of courtesy." *ArrMaz*, 2026 WL 607543, at *3. This was because of (1) the stage in the litigation, with both parties having already filed their competing summary judgment briefs by the time the Court's Opinion and Order was entered; (2) the recognition that the Court's Opinion and Order would directly affect the parties' summary judgment motions; and (3) the understanding that a strict reading of the local patent rules would have effectively destroyed each side's case. *See* N.D. Ind. L.P.R. 1-1(a) (noting that the court may depart from enforcement of the local patent rules in exceptional circumstances); *see also Seong*, 2023 WL 8072050, at *6 (explaining that when imposing sanctions for noncompliance, the idea is to fix the contentions rather than destroy them). Nevertheless, the Court explicitly stated that this "courtesy" may not be extended in the future and that parties moving forward would be required to comply with the local patent rules. *ArrMaz*, 2026 WL 607543, at *3.

however, that no features or page numbers of the Concord 2250 or Convey-All Swinger references are identified, nor are these references ever mentioned again with respect to claim 10. Unverferth argues this violates Local Patent Rule 3-1(e)(3), which requires a "specific identification of where in the prior-art item each limitation of each allegedly invalid claim is found[.]" *See* N.D. Ind. L.P.R. 3-1(e)(3).

Second, Unverferth further argues under contention A1 that the assertion of the Meharry reference as a secondary reference for claim 10 violates Local Patent Rule 3-1(e)(4), which requires an explanation of how the prior art renders the claim invalid and why a skilled artisan would be motivated to combine Meharry with Hiniker 4800 (the primary reference). [DE 176 at 16]. Specifically, although Par-Kan refers to two figures from Meharry, Par-Kan does not mention the reference again in any further discussion of claim 10, thereby failing to identify how combining Meharry with Hiniker 4800 would invalidate claim 10 or why a skilled artisan would be motivated to combine these references with reasonable success. [*Id.*].

In response, Par-Kan states it explains "on a claim-by-claim basis how each cited reference discloses each element of the claim" and provides "detailed explanations as to why a skilled artisan would have been motivated to combine the cited references to arrive at the claimed invention with a reasonable expectation of success." [DE 184 at 8–9]. Beginning with Unverferth's claim limitation argument as to contention A1, Par-Kan asserts it maps Hiniker 4800 and the accompanying secondary references element-by-element with pin cites to manuals, videos, testimony, and other evidence. [*Id.* at 10]. Par-Kan then points to claim element 10(A), which discloses "a main hopper having an upper portion with a main hopper intake opening and a lower portion with a main hopper discharge," stating:

> Hiniker 4800 has a "seed tank" (main hopper) having an upper portion with a main hopper intake opening and a lower portion with an "outlet" (main hopper

21

> discharge). Hiniker Manual at 25; *see also* Hiniker Webpage ("Two easily accessible slide gates permit complete hopper cleanout without any scooping.").

[*Id.* (quoting DE 178-1 at 36)]. Par-Kan further explains that it provides annotated figures specifically identifying the structure of the Hiniker 4800 corresponding to the asserted claim language. [*Id.* (citing DE 178-1 at 37)].

Likewise, for claim element 10(B), which discloses "a support arm having a first end proximate said lower portion of said main hopper and a second end," Par-Kan explains that it identifies with specificity the structure corresponding to the relevant claim language and, acknowledging that the Hiniker 4800 is in a different location than that disclosed in the '123 patent, states that "it would have been obvious to modify Hiniker 4800 in view of Furrer such that the first end of its support arm is proximate the lower portion of the main hopper." [*Id.* at 9–10 (citing and quoting DE 178-1 at 38–39)]. Further, as to claim limitation 10(E), which invokes Meharry, Par-Kan contends it cites two figures from Meharry depicting its load/unload feature, which purportedly corresponds to the relevant claim language. [*Id.* at 11 (citing DE 178-1 at 65)].

As to the motivation to combine arguments, Par-Kan cites as an example its analysis surrounding the combination of the Furrer and Hiniker 4800 references, stating:

> A skilled artisan would have been motivated in view of Furrer to open the space below Hiniker 4800's main hopper and position the first end of its support arm in that open space. Hiniker 4800 and Furrer are in the same field (seed or grain conveyor systems) and address the same problem (improved transport of seed or grain). . . . Moreover, a skilled artisan would have recognized that incorporating the teachings of Furrer would provide several advantages, including flexibility, adaptability, and increased stability. Indeed, Furrer touts that its configuration provides "great flexibility and adaptability in the positioning of the conveyor, whether for unloading or for transport or storage."

[*Id.* at 10 (quoting DE 178-1 at 40)]. Par-Kan continues by explaining that a skilled artisan would have had a reasonable expectation of success in combining these references:

> It would have been a routine design change, requiring merely the addition of known components (e.g., structures like Furrer's support module 12 and turret) according to their known functions (supporting the main hopper above the frame and enabling the support arm to rotate about a vertical axis extending through the main hopper discharge) to achieve predictable results (e.g., "great flexibility and adaptability in the positioning of the conveyor" and greater stability).

[*Id.* (quoting DE 178-1 at 40–41)]. Finally, to address Unverferth's points regarding Meharry, Par-Kan states the following:

> A skilled artisan would have been motivated to modify Hiniker 4800 to incorporate the teachings of the above references. A skilled artisan would have looked to Hiniker 4800 and the above references together because they are in the same field (seed or grain conveyor systems) to address the same problem (improved transport of seed or grain). . . . And, after examining the above references, a skilled artisan would have recognized that Hiniker 4800's conveyor is already capable of, or would require only minimal modifications to be capable of, rotating about its third axis between the claimed loading and unloading positions.

[*Id.* (quoting DE 178-1 at 66)]. Thus, according to Par-Kan, the cited analysis demonstrates that its contentions articulate specific motivations to combine specific references, provides citations to particular components, and its reasons for combining track Federal Circuit precedent. [*Id.*]. *See, e.g.*, *Intel Corp. v. PACT XPP Schweiz AG*, 61 F.4th 1373, 1380–81 (Fed. Cir. 2023) (internal quotation marks omitted) ("[I]f there's a known technique to address a known problem using prior art elements according to their established functions, then there is a motivation to combine.").

Based on these arguments, the Court agrees with Par-Kan that most of the *cited examples* from its contentions satisfy the requirements of Local Patent Rule 3-1(e)(3) and (4). Regarding the analysis for claim 10 under contention A1, Par-Kan identifies page numbers and figures for the primary Hiniker 4800 reference, [*see* DE 184 at 9 (citing DE 178-1 at 56–62, 66)], as well as for the secondary Baskerville, Morris, and Meharry references, [*see id.* (citing DE 178-1 at 63–66)]. Further, Par-Kan sufficiently maps claim 10's limitations by identifying how those

limitations are met by the cited references. Finally, with respect to the Furrer reference, it appears Par-Kan has adequately disclosed how this reference helps invalidate the asserted claim, why a skilled artisan would be motivated to combine it with the primary reference, and whether such a combination would likely succeed. Thus, at least for these cited examples, Unverferth should be on notice as to how Par-Kan plans to assert obviousness.

That said, the Court also agrees with Unverferth that some of the cited references fail to adequately disclose either specific features supporting an obviousness finding or a motivation to combine. Specifically, Par-Kan only briefly mentions the possibility of combining Hiniker 4800 with the Concord 2250 or Convey-All Swinger references to invalidate claim 10, without mentioning or discussing these references further. Par-Kan attempts to get around this by claiming that these references received their own contentions detailing the invalidating features and motivations to combine. [*See* DE 184 at 11]. But while Concord 2250 and Convey-All Swinger do receive their own sets of claim charts, those contentions never discuss the relationship with Hiniker 4800, why a combination of Concord 2250 or Convey-All Swinger with Hiniker 4800 would invalidate claim 10, or why a skilled artisan would be motivated to combine them with reasonable success. Similarly, for Meharry, although specific features are disclosed, Par-Kan never addresses why a skilled artisan would be motivated to combine this reference specifically with Hiniker 4800. Rather, Par-Kan only vaguely states that a skilled artisan would be motivated to combine Hiniker 4800 with "the above references" because these references are "in the same field" and "address the same problem." [*See id.* at 10 (quoting DE 178-1 at 66)]. This, in clear contrast to other examples like Furrer, fails to provide Unverferth with fair notice of how it will be asserted.

24

Therefore, the Court finds that the asserted combinations of Hiniker 4800 with Concord 2250, Convey-All Swinger, or Meharry are noncompliant with the local patent rules. And just like before, the Court must determine an appropriate remedy. Because Par-Kan is already required to narrow its contentions on its own, exclusion here would not be as extreme as only individual items are at stake. *Cf. ArrMaz*, 2026 WL 607543, at *17 (excluding additional or unnecessary individual items and theories where similar theories and contentions remained). Thus, for obviousness theories directed to claim 10 of the '123 patent under contention A1, Par-Kan **may not rely on** combinations of Hiniker 4800 with (1) Concord 2250, (2) Convey-All Swinger, or (3) Meharry. In narrowing its obviousness combinations, Par-Kan must account for the removal of these combinations. Finally, the Court notes that while other deficient examples and references may exist in the contentions, Unverferth did not challenge them specifically, and thus the Court will not engage them here. Notwithstanding, these potential deficiencies will likely become moot once Par-Kan narrows the specific obviousness combinations it plans to assert.

## IV.    <u>Good Cause</u>

Next, Unverferth seeks to exclude three references in Par-Kan's final invalidity contentions that Unverferth claims were belatedly included without good cause. [DE 176 at 19]. These references include (1) the Hiniker 5800 Manual, (2) the CrustBuster 160/240 Seed Tender, and (3) the Friesen Seed Express 240. [*Id.*]. Although Par-Kan included the Friesen Seed Express 240 in the "Good Cause Statement" section of its final invalidity contentions, Par-Kan now states it does not intend to rely on Friesen any further. [DE 184 at 15 n.3]. Accordingly, the Court finds the Friesen Seed Express 240 abandoned and this portion of Unverferth's motion moot. The Court will therefore focus only on the other two stated references.

### A. Legal Standard

Local Patent Rule 5-1(b) states that a party's final invalidity contentions may not contain amendments or previously undisclosed prior art unless supported by "good cause," and that a party wishing to amend their final contentions must include "a separate statement providing the specific grounds establishing good cause for the amendment." N.D. Ind. L.P.R. 5-1(b)(3). In assessing the "good cause" inquiry, the Federal Circuit has held that diligence and prejudice are the relevant considerations. *See Monolithic*, 467 F.3d at 1366–68.

To demonstrate diligence, the movant must first show that the failure to provide the relevant material earlier in the litigation is excusable because the movant acted diligently during discovery. *See id.*; *accord E-Numerate Sols., Inc. v. United States*, 180 Fed. Cl. 270, 276 (2026). "Courts routinely split this diligence requirement into two prongs: (1) diligence in discovering the basis for the amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered." *E-Numerate*, 180 Fed. Cl. at 276 (collecting cases);[8] *see also ArrMaz*, 2026 WL 607543, at *2 (quoting *Monolithic*, 467 F.3d at 1366) (explaining that diligence requires amending contentions "when new information comes to light in the course of discovery").

After finding the movant acted diligently in amending, the next step is for the Court to determine what, if any, prejudice the non-moving party may suffer as a result of the amendment. The Court's local patent rules do not speak directly to what constitutes prejudice. Other courts,

---

[8] The relevant considerations for the first prong—diligence in discovering the basis for the amendment—varies from court to court. In *E-Numerate*, the Court of Federal Claims explained that it considers whether there were "additional or unexpected results of discovery, along with the possibility of unanticipated construction of claim terms according to the court's claim construction order." *E-Numerate*, 180 Fed. Cl. at 276–77. Local Patent Rule 5-1(b)(3), despite only speaking to good cause broadly, similarly considers the same. Other courts, however, consider "[t]he reason for the delay, including whether it was within the reasonable control of the movant." *See Allure Energy, Inc. v. Nest Labs, Inc.*, 84 F. Supp. 3d 538, 541 (E.D. Tex. 2015) (citing *Comput. Acceleration Corp. v. Microsoft Corp.*, 481 F. Supp. 2d 620, 625 (E.D. Tex. 2007)).

however, look to various factors in assessing this inquiry, including: (1) whether the non-moving party was genuinely harmed or surprised, (2) whether discovery would have to be extended or reopened, (3) what effect(s) the amendment may have on the Court's claim constructions, (4) whether experts have made comprehensive positions with respect to claim construction, (5) the length of the delay and its impact on judicial proceedings, (6) the importance or vitality of the matter to the case, (7) whether the amendment is motivated by gamesmanship, and (8) whether sufficient time remains in discovery to allow for additional discovery necessitated by the amendment. *See E-Numerate*, 180 Fed. Cl. at 277 (collecting cases); *see also ArrMaz*, 2026 WL 607543, at *5, 9, 15 (basing prejudice inquiry on how much time remained in discovery, whether discovery was ongoing or concluded, and whether local patent rules' purpose of providing non-moving party with fair notice was satisfied).

### B. Hiniker 5800 Manual

#### 1. Diligence

Starting off with the Hiniker 5800 Manual, Unverferth makes a few arguments as to why Par-Kan was not diligent. First, Unverferth asserts that Par-Kan has had this reference in its possession since at least June 2024, approximately five months before Par-Kan served its preliminary invalidity contentions in November 2024 and 1.25 years before Par-Kan supplemented its contentions in October 2025. [DE 176 at 19 (citing DE 178-4 at 1–56; DE 179-1)]. Unverferth argues this delay warrants exclusion, especially where other courts have done so for much shorter timeframes. [*Id.*]. *See Monolithic*, 467 F.3d at 1367 (affirming district court's finding that movant failed to show diligence where movant waited three months to serve its amended contentions after identifying the amended theory); *see also Unverferth Mfg. Co. v. Meridian Mfg., Inc.*, 2021 WL 297132, at *3 (N.D. Iowa Jan. 28, 2021) (finding movant failed to

demonstrate diligence where movant waited 3.5 months after identifying amended reference and 4.5 months after the deadline for final invalidity contentions to seek amendment); *Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 1067548, at *2–3 (N.D. Cal. Mar. 27, 2012) (denying leave to amend invalidity contentions where movant waited 2.5 months after identifying reference to amend).

Second, in the "Good Cause Statement" section of Par-Kan's final invalidity contentions, Par-Kan states that "[i]n 2024, Par-Kan received numerous disorganized documents from J&M Manufacturing Co. [(a defendant from a previous suit with Unverferth)]," that these documents "relat[ed] almost exclusively to a different Hiniker product—the Hiniker 4800," and that "[b]uried among these materials was the Hiniker 5800 Manual." [DE 176 at 20 (quoting DE 178-1 at 27–28)]. Unverferth argues that this is not accurate because on September 9, 2025, when Par-Kan took the deposition of Hiniker employee Michael Zimprich, Par-Kan revealed the Hiniker 5800 Manual for the first time despite having been asked to disclose any new updates or documents prior to the deposition. [*Id.*]. Unverferth further argues that Par-Kan's assertions of the Hiniker 5800 Manual being "buried" amongst "numerous disorganized documents" is implausible because Par-Kan originally stated in a letter from October 3, 2025, that it had only received "*dozens* of disorganized documents and things." [*Id.* at 21 (emphasis in original) (citing DE 179-1)]. Unverferth claims the change from "dozens" to "numerous" demonstrates a lack of credibility, and further, that the inability to review and locate the manual in only a few dozen documents demonstrates a lack of diligence. [*Id.*].

Third, Unverferth claims Par-Kan engaged in gamesmanship when it failed to disclose the Hiniker 5800 Manual in the months prior to the Zimprich deposition. [DE 176 at 20]. According to Unverferth, Par-Kan attempted to justify its nondisclosure of the Hiniker 5800

Manual by suggesting that Unverferth's counsel should have traveled from its Washington D.C. office to Par-Kan's counsel's office in Boston to inspect the reference amongst the other "hard-copy documents" in its possession. [*Id.* (citing DE 179-2 at 4–6]. Unverferth further states that "Par-Kan's best excuse for its late disclosure is apparently its inability (or unwillingness) to review, scan, and produce the manual in the ***14 months*** during which it had been in Par-Kan's possession." [*Id.* (emphases in original)].

Lastly, Unverferth contends that Par-Kan cannot excuse the 1.25-year delay by claiming it was unsure whether the Hiniker 5800 Manual "was publicly available before the alleged priority date of the asserted patents," even if this claim was true. [*Id.* (quoting DE 178-1 at 28)]. Unverferth explains it repeatedly requested that Par-Kan promptly produce any documents received from third-parties, which Par-Kan failed to do, and that this neglect of its discovery obligations lasted for over a year. [*Id.*]. Unverferth therefore claims Par-Kan's disregard for its disclosure obligations was self-inflicted and explains its lack of diligence. [*Id.* at 21–22].

In response, Par-Kan argues it learned only through discovery that the Hiniker 5800 Manual qualified as prior art. [DE 184 at 16 (quoting DE 178-1 at 27)]. Specifically, while reciting the details of when it received documents pertaining to the Hiniker 4800 from J&M in its good cause statement, Par-Kan asserts that it lacked evidence at the time to ascertain whether the Hiniker 5800 Manual, which was included within these documents, was publicly available before the alleged priority date of the asserted patents. [*Id.* (citing DE 178-1 at 28)]. Par-Kan further argues that evidence at the time suggested that the Hiniker 5800 was not prior art because "the higher model number of the Hiniker 5800 product suggested that the manual, if published at all, post-dated the Hiniker 4800." [*Id.* (quoting DE 178-1 at 28)]. Moreover, "[t]his understanding was reinforced by the fact that the Hiniker 5800 Manual was not cited as prior art in any of the

29

five prior litigations involving the asserted patents or their parent, U.S. Patent No. 8,221,047." [*Id.*].

Par-Kan then explains it discovered this was not the case when it conducted its deposition of Mr. Zimprich on September 9, 2025, the primary purpose of which was to establish facts regarding the Hiniker 4800. [*Id.*]. Par-Kan learned from Mr. Zimprich that the Hiniker 5800 was introduced before the Hiniker 4800 and, further, that the Hiniker 5800 Manual was publicly available and distributed to customers beginning in the early 1990s, thereby making it a qualifying prior art printed publication. [*Id.* at 16–17]. *See Weber, Inc. v. Provisur Techs., Inc.*, 92 F.4th 1059, 1067 (Fed. Cir. 2024) (explaining that the "touchstone of whether a reference constitutes a printed publication is public accessibility," and that the standard for determining public accessibility is "whether interested members of the relevant public could locate the reference by reasonable diligence"). Par-Kan states that after learning this information, it promptly prepared amended invalidity contentions citing the Hiniker 5800 Manual, prepared a statement of good cause for the amendment, and served the amended contentions on Unverferth within eighteen business days following the deposition and four months prior to the deadline for serving its final invalidity contentions. [DE 184 at 17 (citing DE 178-4; DE 179-1)].[9]

Further, Par-Kan states that although it had the Hiniker 5800 document in its possession since June 2024, Unverferth fails to mention that this case was stayed at the time, that the Hiniker 5800 Manual's significance was unknown to Par-Kan until the Zimprich deposition in

---

[9] In the letter to Unverferth accompanying Par-Kan's supplemental invalidity contentions, Par-Kan states it could have identified the Hiniker 5800 Manual earlier as prior art if Unverferth "had not improperly withheld evidence that potentially establishes the Hiniker 5800 Manual's status as prior art." [DE 178-4 at 2]. In the letter, it is explained that Unverferth disclosed its possession of Hiniker-related documents on June 24, 2025, but that it refused to disclose these documents without Hiniker's consent due to a protective order in place from a prior suit with Hiniker. [*Id.*]. It is further stated that Unverferth did not know who at Hiniker to contact regarding the confidentiality of these documents, and that Unverferth ultimately did not take any further action. [*Id.*]. Par-Kan claims this "stonewalling" prevented an earlier disclosure of the document as prior art. [*Id.*].

September 2025, and that the diligence clock did not start until after the deposition. [*Id.*]. Therefore, because Par-Kan promptly disclosed the Hiniker 5800 Manual as relevant prior art within eighteen days after learning of its value, there is no cause to question Par-Kan's diligence. [*Id.*]. Finally, with respect to Unverferth's assertion of gamesmanship, Par-Kan explains that it received the J&M documents (including the Hiniker 5800 Manual) in March 2025, and informed Unverferth that these documents were "available for inspection." [DE 179-2 at 4; DE 199]. Par-Kan argues though that Unverferth never followed up on the request for inspection, nor did it request that Par-Kan scan and Bates stamp the documents despite Par-Kan's offer to do so. [DE 179-2 at 4; DE 199].

Based on these arguments, the Court is persuaded that Par-Kan was diligent in discovering and disclosing the Hiniker 5800 Manual. Par-Kan has sufficiently detailed the reasons for its inability to conclude whether the reference qualified as prior art. But more importantly, Par-Kan has mapped its efforts to correct this deficiency in knowledge. In particular, Par-Kan noted during the hearing that it learned of communications between J&M and Hiniker in March 2025, and in the months following subpoenaed fifteen third-party entities, including Hiniker, to learn information about potential prior art. [DE 199]. After Hiniker was subpoenaed on June 18, 2025, Par-Kan scheduled a deposition with Mr. Zimprich, a Hiniker employee, for September 9, 2025, to further uncover information regarding the Hiniker 4800 documents that were in Par-Kan's possession. It was purportedly during this deposition that Par-Kan discovered the value of the Hiniker 5800 Manual, including its qualification as prior art, and within eighteen business days Par-Kan's final contentions were amended to include the Hiniker 5800 Manual.

This series of events demonstrates both diligence in discovering the basis for the amendment and diligence in seeking the amendment itself. Although Par-Kan may have been in possession of the Hiniker 5800 Manual since June 2024, this is ultimately irrelevant if Par-Kan was unable to determine what the reference was or whether anything could be done with it. The same point can be made regarding the amount of time and effort needed to locate it. To put it differently, one cannot be held at fault for not seeing the diamond in a sea of cubic zirconia without having the necessary tools or knowledge to tell it apart. The primary consideration here is the promptness in acting upon a reasonable discovery, and Par-Kan's extensive discovery efforts, which Unverferth apparently recognized, [*see* DE 199 (citing DE 155) (noting Unverferth's arguments of exhaustive discovery as evidence of bad faith conduct)], showcase that Par-Kan did not simply sit around and leave this reference to the wayside. Rather, Par-Kan actively moved to identify who had relevant information and, through them, the necessary information to determine that the Hiniker 5800 Manual was qualified prior art. The fact that Par-Kan moved to amend its contentions within eighteen business days of discovering the Hiniker 5800 Manual's value as prior art (and four months prior to the final contentions' deadline no less), further demonstrates Par-Kan's promptness and distinguishes these facts from the cases Unverferth cites.

Lastly, the Court finds Unverferth's gamesmanship argument unconvincing. Based on the email chain between the parties' counsel, [*see* DE 179-2], it is unclear why Par-Kan could not automatically Bates stamp and scan the J&M documents when it notified Unverferth that these documents were "available for inspection." Likewise, it is unclear why Par-Kan did not respond to Unverferth's numerous production requests prior to the Zimprich deposition, or whether these requests were satisfied. This behavior in discovery is generally unbecoming and Unverferth

cannot be faulted for wrestling with it now. Nevertheless, gamesmanship in discovery implies using manipulative and deceitful tactics, such as concealing evidence, to gain an advantage over other parties. This is particularly true when the "gaming" party knows the evidence they are attempting to conceal could be valuable to them or another party. But for the reasons discussed above, Par-Kan was unaware of the Hiniker 5800 Manual's value or whether it was even relevant at the times Unverferth's production requests were made. Thus, the Court cannot logically conclude that the failure to disclose the Hiniker 5800 Manual prior to the Zimprich deposition was motivated by gamesmanship.

Accordingly, the Court finds Par-Kan acted diligently in amending its contentions to disclose the Hiniker 5800 Manual. The Court will next consider whether Unverferth will nonetheless be prejudiced by the amendment.

### 2. Undue Prejudice

Unverferth argues it was prejudiced by the inclusion of the Hiniker 5800 Manual because Par-Kan failed to uphold its discovery obligations and disclose the Hiniker 5800 Manual and other documents it received from J&M despite multiple production requests. [DE 176 at 21]. Unverferth also asserts the failure to disclose these documents prior to the Zimprich deposition and, moreover, to reveal the Hiniker 5800 Manual for the first time during the deposition, was an act of gamesmanship. [*Id.* at 20–21]. In response, Par-Kan argues that Unverferth presumably had these documents in its possession given they were derived from previous cases against Unverferth. [DE 184 at 16, 18]. Par-Kan also states there cannot be any prejudice where Unverferth failed to ask questions about the Hiniker 5800 Manual during the Zimprich deposition, took no further investigatory action in the months following the Zimprich deposition,

33

and is unable to explain what it would have done differently had the reference been included in Par-Kan's preliminary invalidity contentions. [*Id.* at 18].

Here, the Court finds that Unverferth would not be unduly prejudiced by allowing Par-Kan to amend its final invalidity contentions to include the Hiniker 5800 Manual. In assessing the prejudice factors, the closest, and perhaps only, factor that could support a finding of prejudice would be Unverferth's assertion of genuine harm or surprise. Based on the arguments and exhibits submitted, it is still unclear whether Par-Kan truly satisfied Unverferth's numerous production requests prior to the Zimprich deposition, or further, whether Par-Kan was negligent in disclosing the documents in a timely manner. Yet despite this, there also remains the possibility that Unverferth was either already in possession of these documents from one of the several prior litigations it was involved in or negligent in its own right in pursuing further information regarding this reference. Either way, the Court is hesitant to find genuine harm or surprise where Unverferth never explains how the Hiniker 5800 Manual's inclusion in Par-Kan's preliminary invalidity contentions would have changed its strategy during discovery, or even how the reference's inclusion in the final invalidity contentions would force Unverferth to conduct additional discovery or change its own contentions.

Likewise, the other prejudice factors do not support exclusion. As Par-Kan noted in its response, the decision to amend its invalidity contentions took place four months before the deadline for filing final invalidity contentions. Further discovery could have taken place during that time, but presumably nothing else was pursued. Moreover, no arguments were made suggesting this reference would impact the Court's claim constructions, would lengthen or delay these proceedings, or would require discovery to be reopened or lengthened. Additionally, the parties are currently engaged in expert discovery and thus there is no concern that an expert has

made any comprehensive position with respect to the Court's claim constructions. But even if they had, that argument was not made. Finally, and as previously addressed with respect to diligence, the Court is not persuaded that gamesmanship took place given the timing of when the disclosure requests were made and when Par-Kan discovered the Hiniker 5800 Manual was qualifying prior art.[10]

Accordingly, the Court finds that Par-Kan has demonstrated both diligence in amending its final invalidity contentions to include the Hiniker 5800 Manual and that Unverferth will not be unduly prejudiced by the amendment. Good cause therefore exists for this amendment.

### C. CrustBuster 160/240 Seed Tender

Moving on to the CrustBuster 160/240 Seed Tender, Unverferth argues a lack of good cause on two grounds. First, Unverferth contends that Par-Kan's current and former employees, as well as its predecessor entity, knew for over a decade that CrustBuster sold seed tenders; and second, the internal documents Par-Kan cites in its "Good Cause Statement" as the basis for first discovering the 160/240 Seed Tender were produced on October 24, 2024, nearly a month prior to the filing of Par-Kan's preliminary invalidity contentions and a year before the 160/240 Seed Tender was added to Par-Kan's supplemental invalidity contentions on October 22, 2025. [DE 176 at 22]. As to the second point, Unverferth further notes that the internal documents cited in the "Good Cause Statement" contained the features, specifications, measurements, parts, and configurations for the products discussed within them [*id.* (citing DE 184-6)], and that Par-Kan

---

[10] The only undiscussed factor is the amendment's "importance or vitality to the case," which here would be neutral at best. This is because it is unknown whether Par-Kan will choose the Hiniker 5800 Manual as one of the references it intends to include in its specific obviousness combinations, or further, whether the reference will be asserted under a theory of anticipation. Until that decision is made, the Court cannot accurately gauge this reference's importance to Par-Kan's trial strategy.

could have simply searched for these products on the internet to find images or learn more about them. [*Id.* at 11 (citing DE 187-1)].

Par-Kan contends in response that when it served its preliminary invalidity contentions in November 2024, it was unaware of any CrustBuster prior art that could be asserted at that time and that the internal documents produced by Unverferth and referenced in the "Good Cause Statement" only listed the name "CrustBuster" without further identifying any specific CrustBuster products. [DE 184 at 19 (citing DE 137-1)]. Moreover, although Unverferth produced additional documents in 2025 identifying the CrustBuster 240 and 242 products, those documents contained insufficient information necessary to understand the structures of those products. [*Id.*]. Because of this, Par-Kan explains that it subpoenaed CrustBuster and, after receiving CrustBuster's document productions on September 17, 2025, deposed Don Hornung, CrustBuster's president and corporate witness, on October 3, 2025. [*Id.*]. From here, Par-Kan states that it amended its invalidity contentions to include the 160/240 Seed Tender in the supplemental invalidity contentions filed on October 22, 2025, which were served months before the deadline for the final invalidity contentions. [*Id.*]. Par-Kan also argues that it was not previously aware of the 160/240 Seed Tender and that Unverferth's assertion to the contrary is based on speculation from a 2013 email, which itself discusses a 2011 Youtube video regarding an entirely separate CrustBuster product. [*Id.* at 20 (citing DE 143-15)]. Even still, Par-Kan contends this video (and the product discussed in it)[11] came out years after the alleged critical date and cannot be asserted as prior art. [*Id.*].

---

[11] For the video purportedly discussed in the 2013 email and cited by Par-Kan in its response brief, *see* MattHornung, *Unverferth Patent Case 004*, Youtube at 4:48–6:19 (June 10, 2011), http://www.youtube.com/watch?v=Irq64UOJYMI.

Because Unverferth does not argue undue prejudice, the buck starts and stops with diligence. The Court is not convinced though that Par-Kan's actions demonstrate a lack of diligence. Beginning with the email, there is no indication that Par-Kan's predecessors were aware of the 160/240 Seed Tender prior to this litigation. Mere discussion of a CrustBuster product generally, without identifying a particular model or product, does not suffice to show knowledge of the product being asserted as prior art. What's more, the video discussed in the email does not even appear to relate to the asserted product.

As for the internal documents, the initial disclosure did not provide Par-Kan with anything beyond the name "CrustBuster," while the subsequent disclosures, despite including some specifications, did not disclose the products' physical features or their relation to the 160 Seed Tender model that Par-Kan would thereafter amend its invalidity contentions to include. The timeline ultimately reflects a quick turnaround from subpoenaing CrustBuster to deposing its corporate witness, and from there to swiftly amending its contentions within a few weeks' span. Further, all of this occurred months before the final invalidity contentions were due.

Accordingly, the Court finds Par-Kan demonstrated diligence in discovering the basis for the amendment and moving to disclose it. And because Unverferth does not argue it was prejudiced, the Court further finds good cause for the amendment. Exclusion is therefore improper.

## V.      On-Sale Bar and Prior Public Use Theories

Finally, Unverferth seeks to exclude Par-Kan's on-sale bar and prior public use invalidity theories ("§ 102 theories") on the basis that they are noncompliant with the local patent rules and, notwithstanding their noncompliance, were belatedly included in Par-Kan's final invalidity contentions without good cause. Those theories relate to (1) two prototypes purportedly tested

and offered for sale at farms prior to the critical date and (2) an alleged demonstration of an embodiment of the claimed invention at the 2006 National Farm Machinery Show in Louisville, Kentucky. [DE 176 at 23 (citing DE 178-1 at 24–26)].

Beginning with noncompliance, Unverferth asserts the § 102 theories were only fully disclosed for the first time in Par-Kan's final invalidity contentions, and that the extent of their disclosure in the preliminary invalidity contentions was limited to the following boiler plate statement:

> Par-Kan further incorporates by reference all invalidity contentions or grounds for invalidity, including those based on prior art, prior public use, the on-sale bar, or § 112, asserted by Par-Kan, its predecessor (Par-Kan Co.), or any third party in any other litigation or proceeding, including *inter partes* review, involving either asserted patent or any related patent (e.g., the '047 patent)[.]

[DE 176 at 23–24 (quoting DE 178-3 at 6–7)]. Unverferth argues this violates Local Patent Rule 3-1(e)(5), which requires "[a] statement identifying with specificity any other asserted grounds of invalidity of any allegedly invalid claims[.]" Indeed, the only other times "on-sale bar" or "public use" is mentioned in the preliminary invalidity contentions is with regard to the Hiniker 4800. [*See* DE 178-3 at 27, 481]. Yet even that does not state with specificity how the Hiniker 4800 was in public use or on sale prior to the critical date, nor does it purport to describe the on-sale bar or public use theories later asserted in the final invalidity contentions.

Par-Kan attempts to maneuver past this discrepancy by arguing it sufficiently disclosed the § 102 theories in the preliminary invalidity contentions when it made the above-quoted "incorporation by reference." [DE 184 at 22–23]. Par-Kan asserts this statement discloses the public use theory raised by Meridian Manufacturing Inc. in its prior litigation with Unverferth, as well as the on-sale theory raised in Unverferth's prior litigation with Par-Kan's predecessor. [*Id.*]. Par-Kan further argues that it did not violate Local Patent Rule 3-1(e)(5) because the

38

statement identified that the asserted patents were invalid under various theories, which is all that the local patent rule requires. [*Id.* at 23].

But these arguments miss the mark completely. First, a blanket recitation or reservation of rights is inadequate to satisfy the notice requirement of the local patent rules. *See ArrMaz*, 2026 WL 607543, at *8 (citing *Days Corp. v. Lippert Components, Inc.*, 2019 WL 6876634, at *2 (N.D. Ind. Dec. 17, 2019)). Here, Par-Kan relies on just that, a blanket incorporation by reference of arguments raised in previous suits against Unverferth. Although Par-Kan describes what these arguments and theories were in its response brief, [*see* DE 184 at 22–23], this description should have been made in the preliminary invalidity contentions. Merely citing the cases in which those arguments were raised does not provide Unverferth, much less the Court, with *specificity* regarding the theories Par-Kan planned to raise, especially where those theories may have been only a few out of several other invalidity theories asserted. The Court therefore agrees that these theories were noncompliant with the local patent rules and that exclusion would be proper on this basis alone. Accordingly, the Court need not reach Unverferth's "good cause" argument.

### **CONCLUSION**

Unverferth's Motion to Exclude [DE 175] is **GRANTED IN PART, DENIED IN PART**. Specifically, the Court **ORDERS** as follows:

- Unverferth's arguments regarding claim construction and the Friesen 240 reference are **denied as moot**.

- The following are **excluded** from Par-Kan's final invalidity contentions and **may not be relied on**:

    o Beck, Meyer, Hitch, Cochran, and Hundeby;

- o Combinations of Hiniker 4800 with (1) Concord 2250, (2) Convey-All Swinger, or (3) Meharry;

- o The § 102 on-sale bar and public use theories.

- By <u>5:00 p.m. on Friday June 12, 2026</u>, Par-Kan **must narrow** its asserted obviousness theories, with particularity, to **three (3) prior art references *or* combinations per claim**.

SO ORDERED.

ENTERED: June 2, 2026

/s/ GRETCHEN S. LUND_____
Judge
United States District Court